SECOND NATIONAL BANK OF RICHMOND, INDIANA, Respondent, vs. SMITH, imp., Appellant.

SAME, Respondent, vs. HERMAN, imp., Appellant.

*April 21—May 8, 1903.*

*New trial on payment of costs: Presumption: Appeal and error: Jurisdiction: Mandatory statutes: Bills and notes: Protest: Notice of dishonor: Sufficiency and evidentiary character of notary's certificate: Evidence: Waiver.*

1. A new trial having been granted upon payment of costs, no reasons being assigned, the presumption arises that the verdict was set aside for errors of the jury; but, in such case, where the verdict was directed by the court it conclusively shows that the new trial was granted because of errors of the court.

2. Where a new trial is granted for error of the court, while the imposition of costs is error, it is not an error of which the appellant can complain where the costs were imposed upon the respondent.

Second Nat. Bank v. Smith, 118 Wis. 18.

3. Sec. 2878, Stats. 1898, as amended by ch. 100, Laws of 1901 (pro-
viding that a motion for a new trial "can only be heard at the
same term at which the trial was had," and "if such motion
be made, but not decided during such term, it shall be taken
as overruled, and an exception to such constructive denial of
the same shall be allowed in the bill of exceptions"), is not
mandatory or jurisdictional in the sense that its requirements
may not be waived by the parties. Thus where the judge an-
nounced that a motion for a new trial would be decided on a
certain day within the term, and, upon request of counsel,
postponed the announcement of his decision until a later day,
which was the first day of the next term, in fairness to the
trial court and opposing counsel, the requirements of the stat-
ute should be held to have been waived.

4. In an action against indorsers of a note dated in Wisconsin but
actually executed, negotiated, and made payable in Indiana, the
law of Indiana controls as to days of grace and the manner of
giving notice of dishonor to the indorsers, while in the courts
of this state, the law of Wisconsin controls as to the kind and
sufficiency of the evidence necessary to prove such notice.

5. In the absence of proof of the law of Indiana relative to what
notice of dishonor is required by the law of that state to fix
the liability of an indorser, the presumption is that it is the
same as that of Wisconsin.

6. Under the laws of both Wisconsin and Indiana, the official cer-
tificate, under seal, of a notary who protests a bill or note, is
presumptive evidence of the fact therein stated.

7. Sec. 1678—25, ch. 356, Laws of 1899, requires that notice of dis-
honor to the indorsers of a note shall identify the instrument
and indicate that it has been dishonored. Sec. 176, Stats. 1898,
provides that the notary shall set forth in his certificate the
contents of the notice. A certificate of the notary stated that
the original note itself, "of which the above is a true and com-
plete copy," was presented and payment refused, and that it
was protested; that notice of protest of "the before-mentioned
note" was served on the indorsers by depositing copies of the
notice addressed to them, in the postoffice. Held, the certifi-
cate sufficiently complied with the statutory requirements and
sufficiently stated the contents of the notice served.

8. In such case, evidence of defendant as an adverse party before
trial, which tended to show that he received timely notice of
dishonor of the note, considered, and held sufficient to require
submission to the jury of that question, even had the notary's
certificate been insufficient.

9. In such case, there was uncontradicted evidence, given by the

officers of plaintiff, that S., who as an officer of the maker executed the note, and who was liable as an indorser, stated that if they would wait until four o'clock of the day on which the note matured, he would come to the bank and pay it. *Held*, that such evidence was sufficient to require the submission to the jury of the question of waiver of protest and notice thereof.

APPEALS from orders of the circuit court for Milwaukee county: WARREN D. TARRANT, Circuit Judge. *Affirmed.*

This is an action brought by the plaintiff, a national banking corporation at Richmond, Indiana, to recover from the defendants the principal and interest on a promissory note which was indorsed by them before delivery, a copy of which note is as follows:

"$8,330.31.                       Milwaukee, Oct. 18, 1900.

"Sixty days after date I promise to pay to the order of A. E. Smith, H. Herman, eight thousand, three hundred and thirty and 31-100 dollars, at the Second National Bank, Richmond, Indiana, value received, with interest at the rate of six per cent. per annum.

                          "C. E. Loss & Co.
                          "Per A. E. SMITH, Treasurer."

The maker of the note was an Illinois corporation, and was not joined as a party. The defendant *Smith* was treasurer of the corporation maker, and executed the note on behalf of the corporation. The defendants answered, alleging payment of the note, and also claiming that no notice of protest thereof had been served. The action was tried by a jury at the April term of the circuit court for Milwaukee county. Upon the trial the plaintiff introduced the note in evidence, with a certificate of protest attached thereto, which certificate reads as follows:

"United States of America, State of Indiana, Wayne County—ss:

"By this public instrument of protest be it known that on the 20th day of December, A. D. 1900, I, Everett R. Lemon, a notary public for the county of Wayne, in the state of Indiana, by lawful authority, duly commissioned and sworn, residing in Richmond, in the county and state aforesaid, at the

request of the Second National Bank of Richmond, Ind., holder of the original note of which the above is a true and complete copy, presented the same to the Second National Bank of Richmond, Ind., and demanded payment thereof, which was refused, whereupon I, the said notary, by the authority aforesaid, did protest, and by these presents do solemnly protest, as well against the drawer of the said note, as against all others whom it doth or may concern, for exchange, re-exchange, and all costs, charges, damages, and interest suffered or to be suffered for the want of payment of the said note. And I do hereby certify that notice of the protest of the before-mentioned note was served upon the maker and indorsers of said note in the following manner, to wit: By depositing a copy of such notice in the post office at Richmond, addressed to each—the maker, C. E. Loss & Co., at Chicago, Illinois, and the indorsers, A. E. Smith, Milwaukee, Wis., and H. Herman, Milwaukee, Wis.

"In testimony whereof, I have hereunto set my hand and affixed my notarial seal the day and year above written.

"EVERETT R. LEMON."

The plaintiff also proved nonpayment of the note, and introduced the evidence of the notary who made the protest, to the effect that he mailed to each of the defendants notices of such protest December 20, 1900, not stating the contents of the notices. After offering some other evidence, the plaintiff offered vol. 3, Annotated Statutes of Indiana for 1894—particularly secs. 7528 and 8040, which last-mentioned section reads as follows:

"8040 (5965). Certificate, as Evidence. (6) The official certificate of a notary public, attested by his seal, shall be presumptive evidence of the facts therein stated in cases where, by law, he is authorized to certify such facts."

Plaintiff then rested, and the defendants also rested, and moved that a verdict be directed in their favor for the following reasons:

"(1) Plaintiff has not proved the law of Indiana. (2) Plaintiff has not proved that the note is entitled to grace. (3) Plaintiff's proof shows the note to have been protested

after it was due. (4) Defendants are entitled to have a verdict directed in their favor because there is no proof of service of due notice of presentment and dishonor, and the laws of this state and Indiana alike require that to be proved before an indorser can be held."

After this motion was made, the plaintiff offered in evidence vols. 1 and 2 of the Revised Statutes of Indiana for 1881, and a colloquy ensued between counsel and the court, from which it appeared that the plaintiff's counsel supposed that the court before the close of the case had given permission to the counsel to introduce the Revised Statutes, while the court and defendants' counsel understood that permission was only given to introduce vol. 1, Annotated Statutes of Indiana for 1894. Thereupon plaintiff's counsel moved to reopen the case, and for leave to introduce the Revised Statutes of 1881, with the title page thereof, showing publication by authority of law. This motion was finally granted, and said Revised Statutes received in evidence, and the following sections read:

"5506. What Negotiable as Inland Bills. Notes payable to order or bearer in a bank in this state shall be negotiable as inland bills of exchange, and the payees or endorsees thereof may recover as in case of such bills."

"5514. On all bills of exchange within the state, whether sight or time bills, three days of grace are allowed."

After the introduction of the statutes the plaintiff again rested, and the defendants renewed their motion for the direction of a verdict on the same grounds as before. A recess was then taken, and after the recess plaintiff's counsel moved to reopen the case again for the purpose of calling as a witness Mr. Lemon, the notary who protested the note; stating that he would have the witness in court at the opening of the morning session on the following day. This motion was denied, and the plaintiff thereupon moved to direct a verdict for the plaintiff. This motion was overruled, and the defendants' motion to direct a verdict was granted, and a

verdict for the defendants rendered.  Thereupon plaintiff's
counsel moved for a new trial of the action, and a stay of the
proceedings pending the motion, which motion was taken
under advisement May 15, 1902.  On July 7, 1902, after the
opening of the July term of said court, the motion for a new
trial was granted, by an order which, as finally modified,
reads as follows:

"A motion to set aside the verdict heretofore rendered
by direction of the court herein, and for a new trial, hav-
ing been made by plaintiff, and argued and submitted at
the same term at which the trial of said action was had,
and the court having taken said motion under advisement,
and being ready to decide the same on the 3d day of July,
1902, and having on the 2d day of July, 1902, announced in
open court that the decision of said motion would be handed
down upon the 3d day of July, 1902 (that day being of the
same term at which said action was tried), and defendants'
counsel having then and there stated to the court that he
would be absent from the city and unable to attend court on
July 3d, and the court having announced in open court at the
same time that no court would be held on Saturday, July 5th,
and defendants' counsel having stated that he would like to
be present when the decision of the court was made, and
would therefore like such decision to be announced at a later
date, the court thereupon stated that the decision would be
announced on Monday morning, July 7, 1902, and there-
upon defendants' counsel stated that he would be unable to be
present personally on that day, but would make arrangements
to be represented; and the court being now well and suffi-
ciently advised in the premises, and ready to announce said
decision in accordance with such statement so made on the
2d day of July, 1902, as above set forth, and on motion of
Quarles, Spence & Quarles, attorneys for said plaintiff, it is
hereby ordered that the motion of said plaintiff to set aside
the verdict heretofore rendered herein, and for a new trial of
the above-entitled action, as against each of the defendants,
be, and is hereby, granted.  It is hereby further ordered that,
before any new trial shall be had, said plaintiff shall pay to
said defendants, or their attorney, the costs and disbursements
of the trial heretofore had in this action."

Due exception was taken by the defendants to this order, and they subsequently moved on affidavits to set the same aside, which motion was denied; and the defendants appealed separately from the order granting the new trial, and from the order refusing to set the same aside.

*Joseph B. Doe,* for the appellant.

For the respondent there was a brief by *Quarles, Spence & Quarles,* and oral argument by *W. C. Quarles.*

WINSLOW, J.   There was no error in reopening the case after the parties had rested, and allowing the plaintiff to offer additional evidence; nor is it claimed by the appellants that such action was erroneous, but they do claim that the court had no power to grant the motion for a new trial after the expiration of the term at which the case was tried.   The motion, though meager in its terms, must doubtless be considered as a motion made upon the minutes of the judge, under sec. 2878, Stats, 1898, as amended by ch. 100, Laws of 1901.   When such a motion is granted without the assignment of reasons, as here, the presumption is that it was granted for error of the jury, or because the court was dissatisfied with the verdict, as being inconsistent or against the weight of the evidence, if terms be imposed; but, if terms be not imposed, then the presumption is that it was granted because of errors of the court, or because the court regarded the verdict perverse.   *Giese v. Milwaukee E. R. & L. Co.* 116 Wis. 66, 92 N. W. 357.   This presumption, however, is not conclusive, and may be overcome by other facts appearing in the record.   In the present case, while the imposition of costs raises the presumption that the verdict was set aside for errors of the jury, and not for errors of the court, the fact that the jury did nothing but to render the verdict directed by the court conclusively shows that the court granted the new trial because it concluded it had erred in directing a verdict for the defendants.   The imposition of costs was

doubtless error, but not an error of which the defendants can complain. Sec. 2878, *supra,* prior to its recent amendment, provided, and still provides, that such motion "can only be heard at the same term at which the trial is had." By ch. 100, Laws of 1901, an additional clause was added to the section, in the following words:

"If such motion be made, but not decided during such term, it shall be taken as overruled, and an exception to such constructive denial of the same shall be allowed in the bill of exceptions."

The appellants' claim is that this provision is mandatory and jurisdictional, and hence cannot be waived by the parties, and that, even if it could be waived, there has been no waiver in this case. We are unable to agree with the contention that the provision is mandatory or jurisdictional in the sense that the parties may not waive its requirements. Its object evidently is to protect the parties to the action, not the public, to expedite business, and to insure an appellant against difficulties or embarrassments likely to result from inaction or neglect by the trial court. Were public policy or interests involved, the question would be quite different, but, where such a provision is imposed simply for the benefit of the parties, the principle is well settled that its benefits may be waived by those parties, if they choose. The facts recited in the order granting the motion for a new trial are quite sufficient to constitute such a waiver by the appellants. The court announced that the motion would be decided July 3d, which was a day still within the trial term, and also announced that no court would be held July 5th. The appellants' counsel requested that the decision be announced at a later date, and the court, in pursuance of that request, postponed the making of the decision until Monday morning, July 7th, which was the first day of the July term. It is true that the court might have held open the April term until the morning of July 7th, and thus have fulfilled the letter of the

statute, by deciding the motion before the opening of the July term on that day; but to hold that, because he did not do so, he lost jurisdiction of the motion entirely, seems to apply a distinction more nice than reasonable. He did decide the motion on July 7th, just as appellants requested him to do. Apparently neither the counsel nor the court thought of the fact that a new term was then to open, or that such opening was of any consequence. Fairness to the trial court, as well as to opposing counsel, requires that the requirement of the statute be held to be waived.

This brings us to the consideration of the merits. A verdict for the defendants was directed in the first instance because the court was of the opinion that the evidence was insufficient to show that notice of dishonor had been given to the indorsers. The verdict was set aside, and a new trial granted, evidently because the court became satisfied that the direction was erroneous, and the sole question is whether the court was right in its final rulings on this point. The note itself, though dated in Wisconsin, was actually executed, negotiated, and made payable in Indiana; and hence, there being no other controlling circumstances in evidence, it must be considered an Indiana contract. *Newman v. Kershaw,* 10 Wis. 333; *Central T. Co. v. Burton,* 74 Wis. 329, 43 N. W. 141. The laws of Indiana therefore control upon all questions relating to the construction and legal effect of the contract, while the laws of the forum (i. e., the laws of Wisconsin) control as to the form of the remedy, the conduct of the trial, and the rules of evidence. *Eingartner v. Illinois S. Co.* 94 Wis. 70, 68 N. W. 664. Applying this principle to the present case, the result is that the law of Indiana controls as to days of grace and the manner of giving notice of dishonor to the indorsers, while the law of Wisconsin controls as to the kind and sufficiency of the evidence necessary to prove notice of dishonor. The laws of Indiana which were introduced in evidence proved conclusively that days of grace were

allowed in that state, and hence it appeared that demand of payment was made on the proper day, to wit, the 20th day of December, which was the last day of grace. No statute or decision of the state of Indiana was introduced, however, showing what notice of dishonor was required by the law of that state to fix the liability of an indorser. In the absence of such proof, the presumption is that the law of Indiana is the same as the law of Wisconsin. By sec. 1678—25, ch. 356, Laws of 1899 (the Negotiable Instrument Law), the notice may be written or oral, delivered personally or by mail, and may be in any terms which sufficiently identify the instrument, and indicate that it has been dishonored; and by sec. 1678—26 of the same law, a written notice need not be signed, and may be helped out by a verbal notice; nor does a misdescription of the instrument invalidate it, unless the party is actually misled. By the law of both states, the official certificate, under the seal of a notary who protests a bill or note, is presumptive evidence of the facts therein stated. Sec. 176, Stats. 1898; Annotated Statutes of Ind. 1894, § 8040. There can be no question, therefore, of the admissibility of the notary's certificate in the present case, nor of its presumptive effect as evidence. *Carruth v. Walker,* 8 Wis. 252. It is argued, however, that the officer has not certified as to the contents of the notice, and that hence there is no proof that any proper notice was mailed. Sec. 176, *supra,* provides that the notary shall set forth in his certificate the contents of the notice. As has been seen, all that the law now requires as to the notice is that it shall identify the instrument, and state that it has been dishonored, and the question is whether the certificate of the notary in the present case shows that the notice mailed by him filled these requirements. We think it does. The certificate fully shows that the note itself was presented, that payment thereof was refused, and that it was protested. It then states that notice of the protest of *the before-mentioned note* (i. e. the note of which a

copy is attached) was served on the indorsers by depositing copies of the notice in the post office. The only reasonable construction that can be given to this certificate as to the notice is that it was a notice that "the before-mentioned note" was duly protested for nonpayment. If the notice was to this effect, then it certainly identified the instrument, and indicated that it had been dishonored. We think, therefore, that the certificate sufficiently states the contents of the notice served.

As to the appellant *Smith* there are other considerations which do not apply to the appellant *Herman*. It appears that upon his examination under sec. 4096, which was introduced in evidence, he identified the note, and gave the following testimony:

"Q. Did you, on or about the 20th day of December, 1900, receive any notice of any kind, from the bank or any notary, that this note was unpaid? A. At a later date than that. Q. At what date? A. I don't remember—after the 20th. Q. How much after? A. I cannot give the exact date. Q. Was that notice in writing? A. Yes sir. Q. Have you it in your possession? A. No, sir. You mean here or— Q. It was within a day or two of the 20th, was it not? A. Yes, sir."

This testimony tended strongly to show that he received timely notice of the dishonor of the note, and it was certainly sufficient to go to the jury on that question, even had the notary's certificate been insufficient. There was also uncontradicted evidence given by the bank officers to the effect that *Mr. Smith* said to them on the 17th of December that if they would wait until Thursday, the 20th, until four o'clock p. m., he would come up to the bank and pay the note. This was sufficient evidence to go to the jury upon the question of waiver of notice of protest. *Worden v. Mitchell,* 7 Wis. 161; 2 Daniel, Neg. Inst. §§ 1103, 1104 (4th ed.). It is true that *Mr. Smith* was the person who, as an officer of the corporation maker, executed the note, and, if this promise was made

on behalf simply of the maker, it would not be a waiver of his rights as an indorser; but if, under the circumstances, the bank officers were entitled to understand and did understand from his statement that he meant that he would pay the note in his personal capacity as indorser, it is difficult to see why the promise did not amount to a waiver of protest, and notice thereof, if in fact the notice given proved to be defective. The question should have gone to the jury.

*By the Court.*—Orders affirmed on both appeals.