GODFREY, Appellant, vs. GODFREY, Respondent.

*December 14, 1905—January 30, 1906.*

*New trial: Verdicts: Discretion.*

1. Where it is apparent from an order granting a new trial that the trial judge was of the opinion that the verdict was contrary to the evidence, and there is evidence strongly tending to show that a note sued on was without consideration and never delivered, the order is one which the lower court has a right, in its discretion, to make, and will not be disturbed unless it clearly appears that there was an abuse of discretion.

2. While, on a motion for a new trial, the trial court has some discretion in the matter of costs, where a new trial is ordered on the ground that the verdict is contrary to the evidence it should be granted only on terms.

3. In this case, on the record, it is *held* that the new trial was granted because the verdict was contrary to the evidence; that there was nothing indicating that the trial court regarded the verdict as perverse, and hence that reasonable terms should have been imposed.

4. MARSHALL, J. (dissenting), is of the opinion that the verdict was perverse, and hence that a new trial should have been granted without terms.

APPEAL from an order of the circuit court for Rock county: JAMES J. DICK, Judge. *Reversed.*

This action was brought to recover upon a promissory note. The trial resulted in a verdict and judgment for plaintiff. The court ordered a new trial, on motion of defendant, on the ground that "said verdict was against the law, contrary to the instructions of the court, and unsupported by the evidence," and ordered that costs abide the event of the action. The plaintiff appealed from the order, and complains that the court erred (1) in granting the motion, and (2) in ordering costs to abide the event of the action.

*William G. Wheeler,* for the appellant.

For the respondent there was a brief by *Fethers, Jeffris, Mouat & Newhouse,* and oral argument by *L. A. Avery.*

KERWIN, J. 1. The evidence, but not the charge, is preserved in a bill of exceptions. It is claimed on the part of the plaintiff that the court abused its discretion in setting aside the verdict and granting a new trial, and.that the evidence fully supports the verdict. There is evidence strongly tending to show that the note was without consideration and never delivered. It is apparent from the order made by the judge below in granting the new trial that he was of the opinion that the verdict was contrary to the evidence. Under such circumstances the lower court had the right in its discretion to grant a new trial, and we cannot see that such discretion was abused. Such action will not be disturbed unless it clearly appears that there was an abuse of discretion. *Eggen v. Fox,* 124 Wis. 534, 102 N. W. 1054; *R. Connor Co. v. Goodwillie,* 120 Wis. 603, 98 N. W. 528.

2. Error is assigned because of failure to order costs paid as condition of new trial. It is claimed by counsel for respondent that matter of costs on motion for new trial is within the discretion of the trial court. The trial court has some discretion in the matter, but where a new trial is ordered on the ground that the verdict is contrary to the evidence this court has held that a new trial should be granted only on terms. *Becker v. Holm,* 100 Wis. 281, 75 N. W. 999; *Wolfgram v. Schoepke,* 123 Wis. 19, 100 N. W. 1054; *R. Connor Co. v. Goodwillie, supra.* On the record before us we hold that the new trial was granted because the verdict was contrary to the evidence, and therefore reasonable terms should have been imposed as a condition thereof. *Becker v. Holm, supra; Wolfgram v. Schoepke, supra.* There is nothing in the record indicating that the court regarded the verdict perverse.

*By the Court.*—The order is reversed, and the cause remanded with instructions to the court below to embody in the order granting new trial the payment of reasonable terms by defendant as a condition.

MARSHALL, J. (*dissenting*). I dissent from the reversal of the order because costs were not imposed on respondent. Our practice as to this subject has drifted far away from that which prevailed when the Code was adopted, and which was intended to be firmly intrenched therein. The trend of evolution has been in the direction of increasing the burdens to be borne by sufferers from unjust verdicts. It has progressed so far, it seems, in that direction as to seriously interfere with the proper administration of justice. The additional step in that regard, taken in this case, moves me to write this history of the matter showing the necessity which exists, in my judgment, for a return to the anchorage of the written law. Our present practice is inconsistent with the Code, inconsistent with that here subsequent to the Code till within recent years, contrary to that in many, and I think most, jurisdictions having a similar Code, and has no logical foundation to support it.

The tendency should be to soften the arbitrary rule that none but a dishonest verdict, which is wrong as contrary to the evidence, can be set aside and a new trial granted, except upon terms, rather than to harden it. It were better, in my judgment, to do away with it altogether. No reason has been assigned here during the history of the court and none, we venture to say, can be found elsewhere for making the victim of an unjust verdict,—in that it is so clearly contrary to the great weight of the evidence and the law as given by the court as to indicate mistake, bias, or something worse,—pay his adversary for the privilege of another opportunity to submit his grievance to the judgment of a jury. The administration of impartial justice is the great primary principle upon which our judicial system should be grounded. That is what courts exist for. They should not tolerate practice rules inconsistent with the purposes of their existence,—rules which rightly or wrongly suggest a purpose to deter persons whose rights

Godfrey v. Godfrey, 127 Wis. 47.

have been violated from invoking the law of the land for relief. The attitude of courts should be one of invitation to those who have wrongs to be redressed to pass their portals, rather than that of a despot grudgingly dispensing favors for a consideration paid to the alleged wrongdoer. Such is the spirit of the Code. Such is the trend of modern thought. This arbitrary exaction from a blameless party for the benefit of his adversary has an appearance of discouraging litigation by making it burdensome regardless of the merits of the case. True, there is no such conscious purpose here, but anything like the appearance of such a purpose, all will agree, should be avoided.

The power of courts to relieve from unjust verdicts is inherent in their jurisdiction, though it is often regulated by statute, as it was designed to be here. That power was recognized at a very early date as essential to guard against possible mistakes, ignorance or bias of jurors, or errors of the court. There are instances on record of its exercise as early as the reign of Edward III. 3 Bl. Comm. 388. It became later a matter of English statutory law. Blackstone thus wrote of it in his day: "Granting a new trial" cures all "inconveniences, and at the same time preserves entire and renders perfect that most excellent method of decision which is the glory of the English law." 3 Bl. Comm. 391. When that was written the arbitrary rule under discussion had not taken shape. Courts were not supposed to be powerless to unconditionally set aside a clearly unjust verdict, in that it was against the great weight of the evidence or the law as given by the court, though not dishonest, except upon condition of the sufferer being mulcted in costs for the benefit of his adversary. They exercised the broadest discretion in cases of strong probability that the decision of the jury was not in accord with the justice of the case.

If we find ourselves today with a rule of judicial making, contrary to the spirit of the Code and wrong in principle, in

that it tends to defeat the real purpose of the judicial system, it is a practice regulation which may readily be changed by the same means it has grown to its present state.  Why should the courts stand guard at their portals, preventing faultless sufferers from unjust verdicts, that stop short of dishonesty, from having the opportunity, at least, for redress till they have paid their adversary a consideration?  Let us examine the history of the matter in search of an answer.

Prior to the Code in New York its courts commonly held to a very rigorous rule on the subject under discussion.  There was supposed to be an inflexible one requiring the imposition of costs on the moving party as the terms of setting aside a verdict as contrary to the evidence.  It was applied in cases of what was denominated here in the beginning, perverse verdicts.  In view of that, doubtless, the Code makers as part of what was designed to be a new and complete system of procedure, including the regulation of costs, provided as follows:

"The judge who tries the cause may, in his discretion, entertain a motion to be made on his minutes to set aside a verdict and grant a new trial . . . for insufficient evidence." Sec. 264, Ann. Code N. Y. 1871.

Note the absence of any express regulation of costs.  That was left entirely under control of the trial judge as a part of his discretionary authority, thus enabling him to consider the facts of each case and impose costs or not according to the justice of the matter.  The arbitrary rule thus intended to be efficiently abrogated, still persisted for the same reason that many purposes of the Code makers failed partly or wholly.  The bench and bar, to a considerable extent, did not receive the new system kindly.  So a body of judicial law was soon created treating it as a mere supplement to, or statutory recognition in part of, the old system.  In harmony with that the old rule was treated as not having lost any of its vitality.  It was applied regardless of whether the verdict was perverse in the sense of being characterized by mere bias or mistake.

It was administered so as to warrant the belief that nothing short of substantially a dishonest verdict was deemed sufficient to warrant a new trial without terms. *Richards v. Sandford,* 2 E. D. Smith, 349, and *Collins v. Albany & S. R. Co.* 12 Barb. 492, are good illustrations. An examination thereof will disclose that the verdicts were perverse, as we shall hereafter define perversity. They are referred to as perverse, and yet costs were imposed on the moving party. Instances are found indicating that in those days judges sometimes reluctantly applied the rule as it was then understood, but felt bound to do so, not recognizing that the Code pointed a way out of the difficulty.

In *Harris v. Panama R. Co.* 5 Bosw. 312, there was no question but what there was some evidence, in mere words, supporting the verdict. The jury probably decided honestly, yet the evidence preponderated so strongly a contrary way as to clearly indicate that their judgment was turned aside (perverted as we shall later show) in some way from the truth of the matter. The case was quite as strong as some found in our books where it was held that the verdict was perverse. A new trial was granted at the costs of the moving party. Woodruff, J., said:

"I have never fully appreciated the justice of a rule which requires the party, in whose favor a new trial is ordered, to pay the costs if the error be deemed the error of the jury; but I suppose it to be too well settled to be at present disregarded."

As we shall see later, the New York doctrine in time took deep root here, though at a late day.

At the outset in this jurisdiction costs were imposed on the moving party on relieving him from a verdict which was contrary to the evidence, or the law as given by the court, or both, wholly as a matter of judicial discretion. The discretion went to the subject of terms as well as the granting of the new trial. No arbitrary requirement as to costs was recognized.

*Territory v. Doty,* 1 Pin. 396 (decided 1844), and *Baxter v. Payne,* 1 Pin. 501, sufficiently evidence that. Some of the most distinguished counsel of the day participated in the first case cited. On one side it was claimed that, where the moving party who was without fault was entitled to a new trial, he was so entitled unconditionally whether the infirmity in the verdict was insufficiency of evidence or disregard of the law of the case. On the other the most that was claimed was, as indicated in the language of counsel, embodied, in effect, in the report of the case, thus:

"The practice in this country has been to impose terms as a condition of granting a new trial. The matter is entirely in the discretion of the court and cannot be error."

The court said:

"Generally a court in the exercise of its discretion, in disposing of motions for new trials, can make such order or grant the motion on such terms as may be just. But, when a verdict is set aside on the ground that it is against law and evidence, it should be done *without terms.* It is the duty of the jury to take the law from the court. It is the province of the jury to decide the facts, and of the court to decide the law. And if the jury should disregard the charge of the court upon the law of the case, it is the duty of the court to set aside the verdict *unconditionally.*"

We venture to say that such was supposed to be the law here from the beginning in 1842 to the adoption of the Code in 1856.

The Code makers in creating a new and complete judicial system for this state covering every subject, including that of the imposition of costs upon parties, adopted verbatim the language of the New York Code. Sec. 174, ch. 120, Laws of 1856. It is now found with one significant change in sec. 2878, Stats. 1898. As changed it reads thus:

"The judge before whom the issue is tried may, in his discretion, entertain a motion to be made on his minutes to set aside a verdict and grant a new trial . . . because the verdict is contrary to law or contrary to evidence."

The change, as will be seen, consists in adding "contrary to law." That is significant in that it is not in the New York Code, but accords with the practice here before and after our Code. The revisers explained their work thus: "Amended to express more exactly the practice adopted under the section as it has been."

The practice, as indicated, was wrought into the Code and was not thereafter called to the attention of the court till 1870, when it was treated in *Emmons v. Sheldon*, 26 Wis. 648. It is quite remarkable that neither court nor counsel referred to the early decisions here. Counsel for appellant recognized that the Code was intended to supersede the practice prior thereto, as appears from the printed brief. The court did not mention the statute but we assume must have had it in mind and probably our early decisions also, since it, in effect, rejected the doctrine of the early New York decisions to which we have referred. The facts were the same, in effect, as in *Richards v. Sandford*, 2 E. D. Smith, 349, which was called to the attention of the court, yet the order granting the new trial unconditionally was sustained, the court saying:

"The general rule doubtless is, to require the party obtaining the order to pay costs. It seems to us that this rule is not inflexible, to be adhered to in every possible case. But when, as in this case, the damages found by the jury are so small as to force upon the mind the conviction that by some means the jury acted under the influence of a perverted judgment, the court might properly relieve the party from the payment of costs upon granting his motion for a new trial. Such an exercise of judicial discretion would seem to be eminently wise in a case of a 'perverse verdict.' "

It is evident the court used the terms "perverse" and "perversity" in their ordinary sense: as indicating something quite short of even constructive dishonesty. If the court did not have in mind the previous decisions here, it doubtless did the existing practice and used the words "perverse" and "perversity" to distinguish between bias or mistake and an im-

partial intelligent application of the judgment of the jury to the evidence. In that sense, the case is in harmony with the early decisions. It should be particularly noted that the order granted was treated as in the field of discretion and yet the imposition of terms upon the moving party was treated as also within that field.

The matter was next referred to in *Carroll v. More,* 30 Wis. 574. The case is not of importance because the new trial was granted upon the ground of newly-discovered evidence.

Next comes *Pound v. Roan,* 45 Wis. 129. There discretionary authority to grant a new trial in a jury case without terms upon the ground that the verdict was against the evidence, was distinctly confined to perverse verdicts. The word "perverse" was evidently used in the same sense as in *Emmons v. Sheldon, supra.* That case was followed by *Smith v. Lander,* 48 Wis. 587, 4 N. W. 767; *Jones v. C. & N. W. R. Co.* 49 Wis. 352, 5 N. W. 854; *McLimans v. Lancaster,* 57 Wis. 297, 15 N. W. 194; *Eviston v. Cramer,* 57 Wis. 570, 15 N. W. 760. There is only this to be noted about those cases. In *Jones v. C. & N. W. R. Co.* the new trial was granted because the jury decided wrongly as to the weight of the evidence. No terms were imposed. The court distinguished between granting a new trial and failing to impose terms, holding that the former was discretionary but the latter not. In that we see the second distinct advance from the early rule. In *McLimans v. Lancaster* the order did not specify the ground. That was conceded to be insufficiency of evidence. No costs were imposed. The order was affirmed. In *Eviston v. Cramer* the record did not disclose the reason for the new trial. It was allowed at the costs of the moving party. The court said the granting of the order in that way was within the discretion of the trial judge, suggesting that the imposition of costs as well as granting the new trial were discretionary,—thus apparently taking a retrograde step.

The next reference to the matter is one of considerable sig-

nificance. It is *Kayser v. Hartnett,* 67 Wis. 250, 30 N. W.
363. The verdict was contrary to the decided weight of the
evidence. It was characterized by bias or mistake, though
not dishonesty. The court held that it was within the dis-
cretion of the court to grant a new trial unconditionally,
citing the early cases where the word "perverse" was not
used and the later cases where it was used, and remarking
that they were in harmony. The irresistible inference from
that is that Justice TAYLOR, who wrote the opinion, recognized
the force of the Code provision and regarded the word "per-
verse" as referring only to bias or mistake. He said: "When
the verdict is clearly against the evidence, such new trial may
be granted without terms." He was speaking of the facts be-
fore him, not of a case where there is such a want of evidence
that a verdict ought to be directed.

The subject was next referred to in *Schweickhart v. Stuewe,*
75 Wis. 157, 43 N. W. 722. There the trial court did not
impose costs but stated that the verdict was wholly unsup-
ported by the evidence. The court said that was equivalent to
deciding the verdict was perverse, the term "perverse" being
used as descriptive of a species of dishonesty; something
much worse than mere bias or mistake. The case at the close
of the evidence was a proper one for the direction of a ver-
dict contrary to that found by the jury. Here we find a sig-
nificant departure from the practice that had existed for
nearly fifty years.

The court next dealt with the matter in *Schraer v. Stefan,*
80 Wis. 653, 50 N. W. 778. No grounds were stated in the
order. There was then engrafted onto the rule the idea that
no ground for the order appearing therein or in the record,
the presumption exists that it was granted because the verdict
was against the weight of the evidence, rendering the imposi-
tion of costs on the moving party an arbitrary requirement.
It was further held that a perverse verdict or one "entirely
unsupported by the evidence" are exceptions to the rule re-

quiring the party moving for a new trial to compensate his adversary for the latter's costs of the previous trial as terms of a rehearing. Here we have a distinct recognition that a perverse verdict is not necessarily contrary to all the evidence. It may be tainted by prejudice or mistake only.

Next came *Garny v. Katz,* 86 Wis. 321, 56 N. W. 912. No reason for granting the new trial was stated in the order and no terms were imposed. In addition to supporting the rule as to the presumption being against the order, the granting of the new trial and the omission of terms were again treated as distinct matters, the former being a discretionary matter and the latter governed by an arbitrary rule.

Next we have *Wilson v. Eau Claire,* 89 Wis. 47, 61 N. W. 290. The order specified that the verdict was not supported by the evidence. The court held that was equivalent to saying it was against the weight of the evidence, and hence the order was erroneous because costs were not imposed on the moving party.

That was followed by *Becker v. Holm,* 100 Wis. 281, 75 N. W. 999, wherein the further element was added to the rule, that in case an order fails to show the grounds thereof the record may be examined for the presence or absence of evidence indicating whether the verdict is perverse. Further,— in the light of the way the term "perverse" seemed to have been regarded since *Schweickhart v. Stuewe,* the court sometimes saying, in effect, that it is a verdict wholly unsupported by the evidence, and sometimes that it is something different, though one so unsupported is equivalent to a perverse verdict,—it was said that the term meant a verdict tainted with something in the nature of dishonesty. It would seem that a verdict without any reasonable basis whatever to support it must partake of dishonesty, at least to the extent of reckless disregard of evidence. I think now that so far as the expression used in that case might be regarded as stating a limitation of the meaning of "perverse" it is too strong. It

went too far, as some previous expressions suggesting it did. What constitutes perversity, as generally understood in the law and as doubtless understood in the beginning of our judicial history and down at least to the *Schweickhart Case,* we will endeavor to show hereafter.

The next in order is *Mills v. Conley,* 110 Wis. 525, 86 N. W. 203. It is in harmony with the last case cited, in that entire absence of evidence to support the verdict was taken as the test of whether it was perverse. That was followed by *Giese v. Milwaukee E. R. & L. Co.* 116 Wis. 66, 92 N. W. 356; *Second Nat. Bank v. Smith,* 118 Wis. 18, 94 N. W. 664; *R. Connor Co. v. Goodwillie,* 120 Wis. 603, 98 N. W. 528. In the *Giese Case* this term was used: "If the new trial be granted because the verdict be perverse or entirely unsupported by the evidence, or because of errors of the court, costs should not be imposed." In the *Bank Case* the idea in *Schraer v. Stefan,* as to the presumption in case of an order stating no grounds and imposing no terms being against it, was changed so as to support it.

The next occasion for treating the matter was in *Wolfgram v. Schoepke,* 123 Wis. 19, 100 N. W. 1054. It was held that in case of setting aside a verdict in the field of discretion terms should be imposed. That added a new element. It had not theretofore been said that the court was powerless in all such cases to deal with the question of costs favorable to the moving party. It is rather confirmatory of the idea that a perverse verdict must be regarded as substantially dishonest. The idea expressed in *Giese v. M. E. R. & L. Co., supra,* as to the presumption being in favor of the order, nothing appearing to the contrary, was restated. It should be further noted that it is said some reasonable terms should be imposed as a condition of the new trial, suggesting that the terms need not necessarily be the costs of the previous trial. That is in harmony with the Code, and contrary to the rule in previous cases. The *Wolfgram Case* made a further change in the ex-

isting rule, in that the idea in *Wilson v. Eau Claire,* 89 Wis. 47, 61 N. W. 290, that the expression "unsupported by the evidence" is synonymous with "against the weight of the evidence," was superseded by the idea that, aided by the presumption, it is synonymous with wholly unsupported by the evidence or perverse.

The language in the opinion before us indicates that the court has returned to the doctrine of *Schraer v. Stefan, supra,* and gone one step further than any previous decision. The verdict was set aside as "against the law, contrary to the instructions of the court, and unsupported by the evidence." It might have all those infirmities and not be perverse. It could not be perverse without having one of them. In the absence of anything efficiently changing the matter the presumption is in favor of perversity. Nothing in that regard appears in the opinion. It was competent to examine the record for evidence of some sort in favor of the verdict which could be pointed to as rebutting the presumption. The opinion is silent on that subject. It says there was strong support in the evidence of respondent's contention, but fails to state there was contrary evidence. An examination of the record suggests that the trial court may well have been in some doubt as to whether there was any such evidence. So no reason is given why the presumption in favor of the order should not prevail. Further, the element as to the verdict being contrary to the instructions of the court is not alluded to in the opinion. A jury may act perversely respecting the judge's instructions as well as in regard to the evidence. The presumption in favor of the order reaches that field. The charge not being in the record there is no way of rebutting such presumption.

The idea that a verdict contrary to the judge's charge is not to be regarded as perverse adds a new burden to a faultless litigant suffering from an unjust verdict, as regards obtaining a rehearing. It is directly contrary to the early de-

cisions and not supported by any subsequent one, as far as I can find. It will be kept in mind, at this point, that in *Terri-tory v. Doty,* 1 Pin. 396, which has been often affirmed, as we have shown, it was said that in case of a verdict contrary to the judge's charge, it should be vacated unconditionally. For aught that appears here, the court may in terms or effect have instructed the jury to find for the defendant. The evidence is such that we are constrained to say the trial court may have taken that view of it.

I should say in fairness to my brethren, they believed there was an erasure in the order and some evidence in favor of the plaintiff, in the record, which was sufficient to rebut the presumption in favor of respondent. The word "perverse," at the outset, appeared in the draft of the order preceding the specification of the grounds we have indicated. It was stricken out before signing. That was thought to indicate unwillingness of the circuit judge to say the jury acted perversely. To my mind, the omitted word was regarded as adding nothing to the language used. I fail to find substantial evidence in the record warranting us in saying the trial court was clearly wrong if it held there was no basis therein for a verdict in plaintiff's favor.

Doubtless much of the confusion on the subject under discussion may be well attributed to insufficient attention to the meaning of the word "perverse." Perversity does not necessarily signify dishonesty, nor anything of that nature. It suggests a state of being moved consciously or unconsciously, most generally the former, to look at things from a wrong standpoint. Dishonesty signifies an intentional violation of the truth. Substantial dishonesty means a reckless or entirely inexcusable disregard of the truth. If a jury, disregarding the judge's charge, either from good motives or bad ones, or through prejudice or other cause, renders a verdict one way when the evidence clearly preponderates the other, they act perversely. It would be exceedingly unjust, how-

ever, to stamp all such conduct as characterized by dishonesty in any sense. A verdict which is the result of anything ulterior to a reasonably fair application of the judgment of the jury to the evidence and the law as given by the court, is perverse. Where a verdict is contrary to all the evidence it does not fall within the ordinary idea of perversity, as regards when a verdict should be set aside and a new trial granted, because in such cases there really is no jury question. Perversity as to a verdict, correctly speaking, relates to some ulterior influence upon a question in deciding a case involving a jury question and in relation thereto.

One of the latest text-book authorities puts the matter under discussion thus: "Where the verdict is perverse, *that is, so clearly against the weight of evidence or contrary to the evidence as to create a presumption of mistake or improper motives of the jury,* a new trial should be granted without imposing costs." 14 Ency. Pl. & Pr. 944, 945. Webster defines perverse as "turned the wrong way, not right; distorted from the right," and the like. The Century Dictionary gives this definition: "Turned away or deviating from what is, right, proper, correct, etc.: 'The only righteous in a world perverse.'" Of course, the distinguished poet did not intend in that line to suggest the idea of a dishonest world. Rapalje gives this as the correct meaning of a perverse verdict: "A verdict whereby the jury refuse to follow the directions of the judge on a point of law." Bouvier defines a perverse verdict thus: "A verdict rendered by a jury which choose not to take the law from the judge, but will act on their own erroneous view of the law. In such cases, however honest the intentions of the jury may be, their verdict is perverse." Both of these definitions obviously carry the idea of inexcusable failure to view the evidence in the light of the law as given by the court.

In *Saunders v. Davies,* 14 Eng. L. & Eq. 532, various expressions were given on this subject. POLLOCK, C. B., de-

fined a perverse verdict in the language we have quoted from Bouvier. MARTIN, B., said: "I never could understand why parties are to pay costs where juries give verdicts contrary to evidence." POLLOCK, C. B., said further: "It is time that parties who are in no default whatever, and not responsible for mistakes committed in the administration of justice, should not be compelled to pay costs when they come to the court for redress." Thus it will be seen the English court regarded a verdict tainted with mistake or bias as perverse and subject to be set aside and a new trial granted without terms.

To recapitulate: At the outset in 1844 (*Territory v. Doty,* 1 Pin. 396) a verdict was deemed perverse if characterized by disregard of the court's instructions, or by bias, or anything whereby there was not some degree of fair application of the judgment of the jury to the case. It was not deemed to be necessarily contrary to all the evidence, nor tainted with anything in the nature of dishonesty. The manner of relieving from it where there was no such taint, and no disregard of the court's instructions, was not regarded as necessarily outside of the field of the discretion as to terms.

The situation stated was wrought into the Code in 1856.

Such situation was recognized without question till 1870, and was then re-intrenched in our judicial system. *Emmons v. Sheldon,* 26 Wis. 648.

In 1878 a dishonest verdict,—one consciously against the preponderance of the evidence,—as well as one tainted with prejudice, passion, or mistake, was treated as perverse (*Pound v. Roan,* 45 Wis. 129), the court however approving previous decisions.

In 1886 (*Kayser v. Hartnett,* 67 Wis. 250, 30 N. W. 363) a verdict so clearly against the weight of the evidence as to satisfactorily show bias or mistake; in other words, perversity untainted with dishonesty, was treated as within the field of judicial discretion, both as to a new trial and the terms thereof.

In 1889 (*Schweickhart v. Stuewe,* 75 Wis. 157, 43 N. W. 722) a verdict so contrary to the clear right of the matter as to suggest something worse than mere perversity, though spoken of as perverse and subject to vacation unconditionally on motion of the losing party, was classed with a disregard of the judge's charge.

In 1891 (*Schraer v. Stefan,* 80 Wis. 653, 50 N. W. 778) a mere perverse verdict, theretofore treated as redressible within the field of discretion, and a verdict entirely unsupported by the evidence (substantially dishonest) were put in the same class, the difference being overlooked, giving rise to the absolute right to a new trial in one case, and the discretionary control over the matter in the other. The presumption was said to be, nothing appearing to the contrary, against the existence of elements justifying omission to impose terms upon the moving party.

In 1894 (*Wilson v. Eau Claire,* 89 Wis. 47, 61 N. W. 290) the idea is found that "unsupported by the evidence" is equivalent to merely "against the weight of the evidence" and inconsistent with perversity.

In 1898 (*Becker v. Holm,* 100 Wis. 281, 75 N. W. 999) perversity was treated as necessarily involving some element akin, at least, to dishonesty,—a verdict tainted with passion, prejudice, or mistake being confused with one so clearly against all evidence as to suggest wilful disregard of the right of the matter.

In 1903 (*Second Nat. Bank v. Smith,* 118 Wis. 18, 94 N. W. 664) the presumption theretofore said to be against the order, no grounds thereof appearing therein or terms imposed, was changed to favor it on the subject of the existence of elements permitting the vacation of the verdict without imposing terms on the moving party.

In 1904 (*Wolfgram v. Schoepke,* 123 Wis. 19, 100 N. W. 1054) the idea was made prominent that when a new trial is granted within the field of discretion the moving party must bear the burden of his adversary's expenses of the former

trial, and the previous rule as to "unsupported by the evidence" being synonymous with "against the weight of the evidence" was changed to make it synonymous with "wholly unsupported by the evidence."

The last expressions of the court regarding presumptions being in favor of the order, where terms of the relief are not imposed on the moving party and the stated grounds for such order are want of support in the evidence and disregard of the court's instructions, and the absolute right of the matter in the latter circumstances, were overlooked so far as the opinion discloses.

What has been said as to general principles involved could be supported by many citations from elsewhere. To illustrate:

"The setting aside of judgments and granting new trials being within the discretionary power of the court, it follows that the court may attach such terms and conditions to the order, whether denying or granting a new trial, as he deems reasonable and just." 1 Abbott, Practice and Forms (Mich.) § 833.

"The terms upon which a court will grant a new trial are peculiarly a matter within its discretion. This must necessarily be so; for so many reasons relating to the conduct, management, and peculiar circumstances of the trial, may exist, that it would be impossible to prescribe any general rules on the subject." Rice v. Gashirie, 13 Cal. 53.

That the authors of the Code intended to establish a rule by written law along the lines suggested in the illustrations, seems plain from the wording of the statute and the state of the law at the time of its preparation. It is in harmony with reason and common sense. When the conscience of the court is so moved in favor of a faultless victim of an unjust verdict,—a verdict rendered under such conditions as to indicate plainly that it is tainted by bias, or mistake, or something worse,—as to decide that the sufferer shall have another chance to submit his case to the judgment of the jury, he

Godfrey v. Godfrey, 127 Wis. 47.

should no longer be regarded as a mere suppliant for judicial favor, but he should be competent to demand a re-submission of his case as a matter of right, not merely permitted to obtain that redress by paying his adversary for the privilege. That was the rule before the Code. The Code was not intended to change it, but rather to efficiently guard it.

There is no efficient obstacle in the way of departing from an established rule of practice. Where it has developed through a somewhat shifty course away from the safe anchorage of the Code and produces unnecessary and unreasonable hardship to litigants and difficulty for trial judges, an orderly and speedy return might well be attempted. In the situation in hand we might tie back to *Kayser v. Hartnett,* 67 Wis. 250, 30 N. W. 363, regarding all decisions up to that time as in harmony therewith, as said therein, retaining the side rules developed from time to time, which are favorable to a liberal and efficient administration. By so doing we would have about this situation:

1. The trial judge may, in his discretion, entertain a motion upon his minutes to set aside a verdict and grant a new trial for insufficiency of evidence or disregard of the court's instructions.

2. Such discretion includes the subject of imposing upon the moving party his adversary's costs of the former trial, or not doing so, according as justice seems to demand.

3. In case of the verdict being contrary to the weight of the evidence, a proper exercise of discretion will impose on the moving party his adversary's costs of the former trial.

4. In case of the verdict being merely perverse, in that the jury, though acting honestly, through passion, prejudice or mistake did not fairly apply their judgment to the evidence, whether to impose any burden upon the moving party as a condition of granting him relief is to be determined by the trial judge according to the justice of each particular case.

5. In case of the verdict being grossly perverse, in that it is

wholly unsupported by the evidence or contrary to the court's instructions, in other words, tainted with something akin to dishonesty, judicial discretion cannot act rightly on the subject of terms other than to vacate the verdict and grant a new trial unconditionally.

6. In case of an order setting a verdict aside and granting a new trial, but not specifying any grounds though imposing upon the moving party his adversary's costs of the former trial as a condition of the relief, the presumption is that the verdict was grossly, not merely, perverse.

7. In case of such an order not specifying any ground therefor nor imposing any terms on the moving party, the presumption is that the verdict was perverse.

8. Where the ground stated in the order therefor is that the verdict is unsupported by the evidence, the presumption is that it was wholly so unsupported, or that the state of the evidence and the circumstances were such as to show reasonably that the verdict was influenced efficiently by passion, prejudice, or mistake.

9. All reasonable presumptions are to be taken in support of the order, but any such presumption is susceptible of being rebutted by anything appearing in the record reasonably deemed to be sufficient therefor.

Applying those principles to the case in hand, without going further than they are in harmony with our recent decisions, the conclusion reached in this case seems to me to be wrong. In any event, the unrebutted grounds stated in the order, that the jury disregarded the court's instructions, stamps the verdict as grossly perverse, entitling the moving party to the unconditional order he obtained.