Deisenrieter, Respondent, vs. The Kraus-Merkel Malting Company, Appellant.

*October 1 — October 22, 1897.*

*Master and servant: Negligence: Defective machinery: Proximate cause: Court and jury: Inconsistent findings.*

1. In an action for an injury by negligence, an instruction that "proximate cause means the direct, the immediate, the near cause, or the nearest cause,— the direct cause of the accident," is erroneous. Neither time nor distance is an essential element of proximate cause, but it may be defined as the efficient cause,— that which acts first, and either immediately, or through other causes set in motion by it, produces the result.

2. Negligence is the proximate cause of an injury only when such injury is the natural and probable result of it, and in the light of attending circumstances ought to have been foreseen by a person of ordinary intelligence and prudence.

3. It is for the court to say, as a matter of law, what constitutes "proximate cause" in the law of negligence, and for the jury to find whether the defendant is legally chargeable with having set it in motion in the particular case.

4. An employee of mature years, engaged in the operation of machinery, is bound to know of and comprehend all the dangers of his

employment which are open and obvious to a person of ordinary understanding and experience, and, even though he is not possessed of ordinary intelligence and capacity, the liability of his employer to him is not increased thereby if he is not chargeable with knowledge of that fact.

5. A finding in the special verdict, in an action by an employee of a malting factory for an injury sustained by falling upon uncovered machinery after being rendered unconscious by the fumes of gas escaping from a kiln in a room below where he was at work, to the effect that sulphur fumes in dangerous quantities escaped to the place where he was working, and that the defendant might reasonably have anticipated such danger, and, in the exercise of ordinary care, should have known and have informed the plaintiff of it, is in direct conflict with another finding that the fumes had never before escaped in dangerous quantities to that place, and that the person who set the plaintiff at work and who had charge of the kiln did so in the customary manner, and that he was free from negligence.

APPEAL from a judgment of the superior court of Milwaukee county: R. N. AUSTIN, Judge. *Reversed.*

This was an action to recover compensation for damages alleged to have accrued to plaintiff by reason of actionable negligence of the defendant. The plaintiff was an employee of the defendant in the latter's malting factory in the city of Milwaukee, Wisconsin, and had been such for a long time prior to the injury complained of. Part of the business of the factory consisted in treating barley with gases from burning sulphur and salt in a kiln arranged for that purpose.

Plaintiff was familiar with that, and with all parts of the factory and the business, as conducted. On the day in question he and another employee were sent by the foreman, Piton, to work in a room on the third floor, which was separated from the kiln room by a brick partition in which there was a hole for a moderate sized belt to be operated through, from a pulley on the shaft hereafter mentioned, to a pulley in the kiln room. The work of plaintiff and his associate consisted of spreading barley over the floor, and, after it

was aired sufficiently, to scrape it up by means of machinery and convey it to an elevator where it was carried to the kiln room. The machinery consisted of the following: A constantly revolving shaft across the end of the room towards the kiln, supported at a point about four feet above the floor by hangers attached to the wall; on such shaft a friction roll; above such shaft a short shaft carrying a spool about three feet long, and a friction roll, the latter being located immediately above the friction roll on the main shaft, and just clear of it when the short shaft was at rest; attached to the spool a rope and at the other end of the rope a scraper, so that when the shaft was in operation it would wind up the rope and draw the scraper on the floor; attached to the supports of the short shaft a rope which came down in front of the friction rolls to a point about two feet from the floor and was there attached to a lever, so that by pressing on the lever the upper friction roll would be lowered down to a contact with the friction roll on the main shaft, and set the shaft carrying the spool in motion, and the scraper also, by the connection before referred to; suspended from a point above, and coming down to about the end of the lever, was a chain, so located as to be somewhat in the way of the operator at the lever. Plaintiff's duty was to stand nearly in front of the rolls, and, by manipulating the lever, start and stop the scraper as desired in moving the barley. He was also required at times to guide the rope so as to keep it in place on the spool. The duty of his associate was to guide the scraper.

While plaintiff was in the performance of his duties as aforesaid, it is alleged in the complaint, fumes of burning sulphur came into the room from the kiln in such quantities as to cause him to lose consciousness and to fall forward, whereby his hand was caught between the friction rolls and crushed so that amputation was necessary. The negligence alleged was neglect by the defendant to guard the friction

Deisenrieter vs. The Kraus-Merkel Malting Co.

rolls so as to prevent the person attending the machinery from being caught therein and injured; also having the chain suspended at a point where it tended to interfere with plaintiff's motions in the performance of his duties; also failing to warn plaintiff of the dangerous character of the machinery, and in allowing sulphur smoke and fumes to escape into the room in such quantities as to overcome persons there employed.   The allegations of negligence were all met by the answer, and the defense of contributory negligence was pleaded.   Numerous exceptions were taken to the instructions given to the jury, referred to in the opinion.

The jury found specially, among other things, that sulphur fumes escaped from the kiln into the place where plaintiff was working, in sufficient quantity to be dangerous to a person working there; that there were more fumes of sulphur at the time of the accident than were usually there at any time prior thereto, while plaintiff worked at the barley; that defendant, before the injury to plaintiff, had reason to know that sulphur fumes might escape from the kiln room to the place where plaintiff was injured, in sufficient strength to overcome a person at work there; that defendant, in the exercise of ordinary care, ought to have known that the sulphur fumes might escape from the kiln to the place where plaintiff was at work, in sufficient quantity and strength to be dangerous; that defendant, in the exercise of ordinary care, ought to have warned the plaintiff of the dangers attendant upon the work he was doing; that defendant could reasonably have anticipated that such an accident as the one which happened to plaintiff might occur from the fumes of sulphur escaping from the kiln; that plaintiff did not know such danger in sufficient time, by the exercise of ordinary care, to have avoided the accident; that the danger of being injured by the sulphur fumes, in the manner in which plaintiff was injured, was not one of the ordinary risks of his employment; that the escape of sulphur fumes from the kiln to the

place where plaintiff was working, was not caused by the foreman, Piton, shutting down the damper in the kiln, and that Piton was not guilty of any want of ordinary care in the performance of his work; that in the process of treating barley the damper was customarily kept closed; that the defect in the lever did not contribute to produce plaintiff's injury; that he did not receive such injury accidentally; that defendant, in the exercise of ordinary care, could have prevented the escape of sulphur fumes to the third floor of the malt house, in such quantity as to overcome the plaintiff; that the friction gearing at which the plaintiff was working was so located as to be dangerous to employees when engaged in their ordinary duties; that the gearing could have been guarded without interfering with the operation of the machinery, so as to have prevented plaintiff from being caught therein; that plaintiff did not have sufficient intelligence and experience to comprehend the danger in operating the machinery in which he was hurt; that such danger was so obvious and plain that a person of ordinary intelligence might have known and comprehended the same; that plaintiff was not guilty of any want of ordinary care which contributed primarily to the injury; that he was not guilty of any want of ordinary care in not abandoning the work in time to avoid the injury; that the proximate cause of such injury was the fumes of burning sulphur and salt, and the unprotected friction gearing; and that the compensation required to measure plaintiff's injuries is $5,000.

There was a motion made by defendant to set aside the verdict and for a new trial, because contrary to the evidence, and upon other grounds, which motion was denied. Thereupon judgment was rendered for the plaintiff upon the special verdict, from which this appeal was taken.

For the appellant there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas*, and oral argument by *E. P. Vilas*.

For the respondent there was a brief by *Wheeler & Wheeler*, attorneys, and *Orren T. Williams*, of counsel, and oral argument by *Lyman G. Wheeler* and *Mr. Williams*. To the point that the charge as to proximate cause was correct, they cited Anderson, Law Dict. 155; 16 Am. & Eng. Ency. of Law, 431; *Milwaukee & St. P. R. Co. v. Kellogg*, 94 U. S. 469; *Atkinson v. Goodrich Transp. Co.*, 60 Wis. 141, 156.

MARSHALL, J. The proximate cause of the injury on the evidence was a fact to be found by the jury. Questions were included in the special verdict bearing on the subject, and in respect thereto the court instructed the jury as follows: "The word 'proximate' is used there, and perhaps you ought to be informed as to the meaning of the word. It means the direct, the immediate, the near cause, or the nearest cause — the direct cause of the accident. . . . I understand the proximate cause to be the direct and efficient cause which produces the result." Error is assigned on such instructions. That involves a subject that has been so fully, so often, and so recently discussed in this court that little if anything new can be said in respect thereto. The meaning of the word "proximate" was given, in effect, as a definition of the term "proximate cause" in the law of negligence, and later the jury were told directly that the proximate cause is the immediate, the near, or the nearest cause. That is manifestly wrong. Neither time nor distance is essentially a controlling element. Negligence is the proximate cause of an injury only when the injury is the natural and probable result of it, and, in the light of attending circumstances, it ought to have been foreseen by a person of ordinary care. Those elements may exist and the producing cause be followed by lapse of time and several intervening events, so long as they are all set in motion by the first cause and all form a continuous chain down to the injury. So the last event, or immediate, near, or nearest cause, it

will be easily seen, is not necessarily the proximate cause as we use the term in the law of negligence.

That is illustrated in the recent case of *Donohue v. Warren*, 95 Wis. 367. A person, accompanied by plaintiff, was driving with a span of horses and a carriage on the public road in the night time. Suddenly the right wheel dropped into a ditch and the driver was thrown out and lost control of the horses. The horses immediately became excited and ran a short distance, when the left wheel of the carriage dropped into a ditch and the plaintiff was thrown out and injured. The near, nearest, or immediate cause was the second ditch, but the proximate cause was the first ditch. The intervening events of the driver being thrown from the carriage, his losing control of the horses, their becoming frightened and running away, were all links which tied the final result back to the first acting cause. So, in *Kingsley v. Bloomingdale* (Mich.), 67 N. W. Rep. 333, plaintiff was driving his horse, on the public way, hitched to a buggy. He passed over a bridge not guarded by any rail; then stopped to converse with a neighbor. While so engaged the check rein became caught by a thill, which caused the horse to become unmanageable and to back onto the bridge and off from it at the unguarded side. The immediate cause of the accident was the absence of a proper guard rail; the producing cause was the misplaced check rein. Further illustrations are unnecessary to bring out plainly the misleading character of the learned judge's language. It was of no importance whatever for the jury to be instructed as to the ordinary signification of the word "proximate." It was important for them to known the meaning of the term "proximate cause" as used in the special verdict.

That there are so many failures to properly submit the question here discussed to juries certainly does not grow out of any dearth of authority on the subject. It exists in abun-

dance in this court and the highest courts of this country
and of England, and the principles are well defined and laid
down as indisputable, by elementary writers generally.   As
early as *Kellogg v. C. & N. W. R. Co.* 26 Wis. 223, this court
said, in effect, that the proximate cause is not controlled by
time or distance.   In *Atkinson v. Goodrich Transp. Co.* 60
Wis. 141, the court said: 'The proximate cause of an injury
cannot be referred to negligence unless it appears that such
injury was the natural and probable consequence of such
negligence, and that it ought to have been foreseen in the
light of attending circumstances.'   The court has said many
times, substantially, that the test of actionable negligence is
not whether the injury complained of was the immediate or
the natural result of the conduct of another; that there must
be the negligent act, an injury as a natural and probable.re-
sult, either immediate or at the end of a succession of events
united by a close causal connection, together forming a com-
plete chain reaching from the act complained of down to the
injury, and producing it; the attending circumstances in
either case being such that a person of ordinary intelligence
and prudence might reasonably have expected the injury as
a probable result of such negligent act.   *Davis v. C., M. & St.
P. R. Co.* 93 Wis. 470; *Block v. Milwaukee St. R. Co.* 89 Wis.
378; *Barton v. Pepin Co. Agr. Soc.* 83 Wis. 19; *Huber v.
La Crosse City R. Co.* 92 Wis. 636; *Craven v. Smith,* 89 Wis.
119; *Guinard v. Knapp-Stout & Co. Company,* 90 Wis. 123;
*Klatt v. N. C. Foster Lumber Co.* 92 Wis. 622; *McGowan
v. C. & N. W. R. Co.* 91 Wis. 147; *Klochinski v. Shores Lum-
ber Co.* 93 Wis. 417; *Kreuziger v. C. & N. W. R. Co.* 73 Wis.
158; *Jewell v. C., St. P. & M. R. Co.* 54 Wis. 610; *Kerkhof
v. Atlas Paper Co.* 68 Wis. 674; *Sheridan v. Bigelow,* 93 Wis.
426; *Donohue v. Warren,* 95 Wis. 367; *Andrews v. C., M. &
St. P. R. Co.* 96 Wis. 348.   The elements of natural and prob-
able result, and that the result ought to have been foreseen
by a person of ordinary intelligence and prudence in the

light of attending circumstances, are distinguishing char-
acteristics between mere accident, or negligence from which
no legal responsibility follows, and actionable negligence.
If one be injured by the act of another and such elements
are not present, it is referred to the natural imperfections
to which the mass of mankind are customarily subject, and
the risks incident to human existence and human activity,
which, in the associations of life, all members of society are
supposed to assume.

It is said in the briefs of counsel for respondent that the
difficulty of making any proper definition of "proximate
cause" is too well known for comment, citing *Milwaukee &*
*St. P. R. Co. v. Kellogg*, 94 U. S. 469, where the court said,
" The true rule is that what is the proximate cause of the
injury is ordinarily a question for the jury;" and *Atkinson*
*v. Goodrich Transp. Co., supra,* where the court said, "It is
not a question of science or legal knowledge." The mean-
ing of the observations referred to, counsel obviously mis-
apprehends.    True, what constitutes the proximate cause
in any given case is for the jury to find, the same as any
other fact; it can be found by the court only when the evi-
dence and inferences therefrom are all one way; and there
is no scientific test or legal rule, strictly so called, by which
the fact can be determined; but what constitutes the proxi-
mate cause in the law of negligence is always a question for
the court, and it is governed by as well-settled legal princi-
ples as any other legal question.    Hence, it is for the court
always to require the jury to find the fact, either by an-
swers to questions involving its essential elements, or by
answering a question, under proper instructions, which calls
for the ultimate fact, or by a general verdict under proper
instructions.    In short, it is for the court to say, as a mat-
ter of law, what constitutes " proximate cause " in the law
of negligence, and for the jury to find whether the defend-
ant is legally chargeable with having set it in motion in the

particular case.   No set words are essential or exclusive in defining such cause.   It may be defined as the efficient cause, that which acts first and produces the injury as a natural and probable result, under such circumstances that he who is responsible for such cause, as a person of ordinary intelligence and prudence, ought reasonably to foresee that a personal injury to another may probably follow from such person's conduct.   It is not necessarily the immediate, near, or nearest cause, but the one that acts first, whether immediate to the injury or such injury be reached by setting other causes in motion, each in order being started naturally by the one that precedes it, and altogether constituting a complete chain or succession of events, so united to each other by a close causal connection as to form a natural whole, reaching from the first or producing cause to the final result.

But it is said that all the elements of the proximate cause were found by the special verdict, so that the faulty instructions referred to were not prejudicial.   The findings relied on are to the effect that sulphur fumes escaped from the kiln, to where plaintiff was working, in dangerous quantities; that defendant might reasonably have anticipated such danger, and in the exercise of ordinary care should have known and have informed plaintiff of it.   The difficulty is that such findings must be construed in connection with others to the effect that sulphur fumes never theretofore escaped to the place where plaintiff was working, in dangerous quantities; that Piton, who had charge of the kiln and set plaintiff to work, and who operated the kiln, did so in the customary manner, and that he was free from negligence.   The two series of findings, seemingly, are in direct conflict.   If the person who had personal knowledge of all the attending circumstances of plaintiff's injury, and who actually operated the kiln, was free from negligence, and the sulphur fumes had never before escaped in dangerous quantities to the

place where plaintiff was working, and the work was being done in the customary way, it would seem to follow, necessarily, that defendant cannot be chargeable with negligence in that it did not foresee the danger and warn plaintiff of it. In view of the conflicting character of these findings, we are unable to say that the elements constituting proximate cause are satisfactorily found by the verdict.

But no less serious question arises on the following findings of the special verdict: The friction gearing was so located as to be dangerous to employees when engaged in their ordinary duties; such gearing, without interfering with the operation thereof, might have been guarded so as to have prevented plaintiff from being injured; he had not sufficient intelligence and experience to comprehend the danger in operating the machinery; such danger was so obvious and plain that a person of ordinary intelligence might have known and comprehended it; plaintiff was not guilty of any contributory negligence; the proximate cause of his injury was the fumes of burning sulphur and salt and the unprotected friction gearing. Plaintiff was a man of mature years, and, even though the fact be that he was not possessed of ordinary intelligence and capacity, there is no finding that defendant had knowledge of such fact, nor is there any evidence upon which defendant can be charged with such knowledge. Hence, for the purposes of this case, plaintiff was bound to know of and comprehend all the dangers which were open and obvious to a person of ordinary understanding and experience. *Klochinski v. Shores Lumber Co.* 93 Wis. 417; *Batterson v. C. & G. T. R. Co.* 53 Mich. 127. A failure in that regard on his part constituted a want of ordinary care, and if it contributed to the injury he received it is fatal to a recovery against the defendant. That it did so contribute is expressly found by the jury by the finding that the dangerous machinery was part of the proximate cause of the injury. That finding is in direct conflict with

the finding that the plaintiff was not guilty of contributory negligence.    If there were no other error, this is so manifest as to necessarily work a reversal of the judgment.

There are numerous other errors assigned, but, if prejudicial, they are such as are not liable to occur on another trial, hence it is not considered necessary or advisable to discuss them in this opinion.

*By the Court.*— The judgment of the superior court is reversed, and the cause remanded for a new trial.