Monaghan, Respondent, vs. Northwestern Fuel Company, Appellant.

*October 6—October 26, 1909.*

*Appeal: Exceptions: Instructions to jury: Master and servant: Injuries from unguarded machinery: Proximate cause: Contributory negligence: Evidence: Competency: Opinions of experts: Improper remarks by counsel: Questions for jury: Excessive damages.*

1. Rulings refusing requested instructions will not be reviewed on appeal in the absence of exceptions thereto.
2. The jury were instructed that in answering, in the special verdict, a question as to whether the machinery in which plaintiff

was injured was so located as to be dangerous to employees in the discharge of their duties, they should consider "among other things" the location of the machinery with reference to where it became reasonably necessary for employees to be situated in the discharge of their duties in and about it, and its situation and surroundings as shown by the evidence. *Held,* that presumably the jury understood that the "other things" were limited tô things shown by the evidence, and in the absence of any request for an instruction to that effect there was no prejudicial error.

3. In the absence of a request therefor, omission to give any instructions relative to a question submitted for special verdict is not error.

4. It is not error to give to the jury *verbatim* the definition of proximate cause found in *Deisenrieter v. Kraus-Merkel M. Co.* 97 Wis. 288, approved in *Feldschneider v. C., M. & St. P. R. Co.* 122 Wis. 431.

5. Upon the issue of contributory negligence of a servant who was injured while oiling machinery, evidence as to how other servants had done the same work was competent to show that he was doing it in the usual and ordinary way.

6. The opinion of a physician as to the physical condition of plaintiff, the necessity of an operation, and its effect, based on plaintiff's testimony as to his condition and upon an examination made by the witness after the injury, was competent, its weight being for the jury.

7. A model produced by plaintiff having been excluded because incorrect, remarks of plaintiff's counsel in his argument to the jury to the effect that defendant produced no model because it would be less favorable to it than that produced by plaintiff, are *held* not ground for reversal, in view of an instruction to the jury that no inference adverse to defendant should be drawn from the argument of plaintiff's counsel, except in so far as that argument was based on testimony.

8. What may be a proper and sufficient barrier or guard with reference to servants having no duty to perform about dangerous machinery is not necessarily so for one who, in oiling such machinery, is obliged to lean over the barrier and bring his hands and other parts of his body in close proximity to rapidly revolving gearings. Such a servant is entitled to have those gearings securely guarded or fenced for his safety, if practicable without seriously impairing the efficiency and use of the machinery.

9. Sec. 1636*jj*, Stats. (Supp. 1906; Laws of 1905, ch. 303), providing that, in an action by a servant for personal injuries caused by

negligent omission of the master to securely guard dangerous,
machinery, the fact that the servant continued in the employ-
ment with knowledge of such omission shall not operate as a
defense, has eliminated assumption of risk from the defense of
contributory negligence in such cases.

10. A man forty-three years old, earning $2.75 per day, sustained in-
juries necessitating amputation of his left arm close to the
shoulder; his nose was broken and his face disfigured; three
ribs were fractured, and his side badly lacerated and perhaps.
permanently injured. *Held*, that a verdict awarding $14,500
damages, upheld by the trial court, should not be disturbed on,
appeal. BARNES, MARSHALL, and DODGE, JJ., dissent.

11. MARSHALL, J., is of the opinion that under sec. 2878, Stats. (1898),.
where damages awarded are so excessive as to show passion or
prejudice on the part of the jury the verdict may be set aside
as being "contrary to the evidence;" and that it may be set
aside "for excessive or inadequate damages" although there
was no passion, prejudice, or improper motive.

APPEAL from a judgment of the circuit court for Douglas.
county: A. J. VINJE, Circuit Judge. *Affirmed.*

Action to recover damages for a personal injury. Plaint-
iff was employed by defendant on its coal dock. Coal was.
elevated and screened at such dock, and the necessary power
was furnished by electric motors. Plaintiff had been in
charge of one of such motors for about eleven months before
the injury. The motor was stopped and started by plaintiff
on signal, and it was his duty to oil the machinery connected
therewith and keep it in running order. Power was deliv-
ered from said motor through a number of cogwheels in close
proximity thereto. The motor stood about two feet above the
platform leading to it. The machinery and motor appear to
have been practically unapproachable on three sides. They
could be approached by a platform on the fourth side, which.
platform was used by the operator in oiling the machinery.
The gearings were in line with the platform. There was a
railing, made of scantling, nearly three feet in height near the
end of the platform and in close proximity to the motor.
There were boxes in the bearings for the purpose of oiling;

them.   The gearing in which plaintiff was hurt was in the neighborhood of three feet from the top of the railing in a downward and westerly direction from such railing.   It was necessary for plaintiff in oiling the bearings in question to lean over the railing, and, owing to the prevalence of coal dust, it appeared to be necessary for the oiler at times to bend over some distance so as to bring his eyes in close proximity to the oil cups to enable him to see them.   While plaintiff was leaning over such railing his sleeve was caught in one of the gearings and he was dragged over the railing and into the machinery and badly injured.   The alleged negligence of the defendant consisted in its failure to cover the gearings in which plaintiff was hurt.

The jury found (1) that the machinery in which plaintiff was injured was so located as to be dangerous to employees in the discharge of their duties; (2) that the defendant failed to have the machinery securely guarded or fenced; (3) that the failure to securely guard or fence was the proximate cause of plaintiff's injury; (4) that the plaintiff was not guilty of any want of ordinary care which contributed to produce his injury; (5) that the plaintiff sustained damages to the amount of $14,500 by reason of his injury.   On such verdict judgment was rendered in favor of plaintiff.

For the appellant there was a brief by *P. J. McLaughlin, A. E. Boyesen,* and *Solon L. Perrin,* and oral argument by *Mr. McLaughlin* and *Mr. Perrin.*

*W. P. Crawford,* for the respondent.

BARNES, J.   The appellant assigns as error: (1) The refusal of the court to give certain instructions which were requested; (2) the charge of the court under the first question in the special verdict; (3) failure of the court to give any charge in relation to the second question in the special verdict; (4) giving an erroneous definition of proximate cause; (5) receiving incompetent testimony prejudicial to the de-

fendant; (6) prejudicial and improper remarks made to the jury by plaintiff's counsel; (7) refusal of the court to direct a verdict in defendant's favor, (a) because the gearing upon which plaintiff was injured was sufficiently guarded or fenced, and (b) because the plaintiff was guilty of contributory negligence; (8) refusal to set aside the verdict because the damages assessed were excessive.

1. No exception was taken to the refusal of the court to give the instructions requested, hence the rulings of the trial judge in this regard cannot be considered in this court.

2. By the first question in the special verdict the jury was asked: "Was the machinery in which plaintiff was injured so located as to be dangerous to employees in the discharge of their duties?" The court charged the jury:

"In answering this question you will consider, *among other things,* the location of the machinery in question with reference to where it became reasonably necessary for employees to be situated or placed in the discharge of their duties in and about it, and its situation and surroundings as shown by the evidence."

The criticism upon the charge is the use of the words "among other things;" it being urged that the instruction permitted the jury to consider matters outside of the evidence. In answering the question there were a number of things that the jury might very properly have considered aside from the specific ones mentioned by the court, as, for instance, the height of the railing, its proximity to the gearing, and the extent to which the vision was obscured by coal dust, as well as other items of evidence. Presumably the jury understood that the "other things" they might consider should be restricted to such things as were shown by the evidence. In the absence of a request to charge that extraneous matters should be excluded from consideration, we do not think any prejudicial error was committed, if it be conceded that the language used was not as guarded as it might have been.

3. No request was made upon the court to give any charge

in relation to the second question in the special verdict. In the absence of such request no error resulted. *Newton v. Whitney,* 77 Wis. 515, 46 N. W. 882. Moreover, we do not find any exception in the record to raise this question.

4. The definition of "proximate cause" given by the court was taken *verbatim* from *Deisenrieter v. Kraus-Merkel M. Co.* 97 Wis. 279, 288, 72 N. W. 735, which definition is approved in *Feldschneider v. C., M. & St. P. R. Co.* 122 Wis. 423, 431, 99 N. W. 1034, and in other cases, and it is undoubtedly one that is very generally given by trial courts. It is probable that counsel could improve on this definition, but it has been so often laid down for the guidance of trial courts, and they have been so frequently admonished to follow it, that it would hardly be consistent to hold that error resulted from so doing.

5. It is urged that the court erred in receiving testimony tending to show how other servants of the defendant oiled the machine prior to the plaintiff's employment, where they stood when oiling it, the condition of the light at the time of the injury, and the fact that the gearings were uncovered. It was competent for the plaintiff to show on the issue of contributory negligence any pertinent facts tending to establish ordinary care on his part. The fact that he oiled the machinery in the usual, customary, and ordinary way could best be established by showing how others had done the same work, and we think the testimony was not incompetent.

Dr. Sarazin was permitted to testify under objection that, assuming the statement of the plaintiff to be true as to his condition, he thought there was dead bone in the ribs, and that an operation to remove the same would be necessary, and that such removal would weaken the side. It is urged that the doctor had made no sufficient examination and had no sufficient information concerning the plaintiff's condition to qualify him to give the testimony complained of. The evidence was based on the statement made by the plaintiff on the

witness stand as to his condition, and upon an examination made by the witness after the injury. The evidence was competent, even though it might not have been convincing. The weight to be accorded to it was for the jury to pass upon.

6. The plaintiff produced a model on the trial which the court refused to receive in evidence because it was not correct. In his argument to the jury plaintiff's counsel stated in substance that the reason why defendant did not produce a model was that if one had been produced it would have been more unfavorable to it than that made by plaintiff. Exception was taken to such remarks. The court charged the jury: "No inference adverse to the defendant should be drawn from the argument of plaintiff's counsel, except in so far as that argument is based on testimony." In view of this instruction and of the nature of the remarks and the probable cause of their being made, no error resulted.

7. It is argued with much force that this court should say as a matter of law that the machinery in question was sufficiently fenced or guarded, and that therefore no negligence or breach of statutory duty was shown on the part of the defendant, and also that plaintiff was guilty of contributory negligence. These are the principal contentions relied on for a reversal of the judgment. Had the injury happened to some employee who had no duty to perform about the machinery in question, the argument that plaintiff had complied with its statutory duty to sufficiently fence or guard this machinery would be convincing. The barrier was nearly three feet high and was substantial. But what might be a proper and sufficient safeguard for the ordinary employee might not be so for the plaintiff, who in the performance of his duties was obliged to lean over the barrier and bring his hands and other parts of his body in close proximity to rapidly revolving gearings. The plaintiff was as much entitled to have these gearings securely guarded or fenced for his safety as were other employees. Manifestly, a covering over the gearings in his case

would perform a function which a mere fence or barrier would not. There was no attempt to show that it was impracticable to cover such gearings without seriously impairing the efficiency and use of the machinery, and we think the question of defendant's failure to sufficiently fence or guard the gearings in question, under the facts of this case, was fairly one for the jury to pass upon.

If we eliminate from the defense of contributory negligence the fact that plaintiff continued in his employment a period of eleven months knowing its dangerous character, there is nothing to be found in the evidence that would warrant a court in holding as a matter of law that plaintiff could not recover because he was shown to be guilty of contributory negligence. Sec. 1636*jj*, Stats. (Supp. 1906; Laws of 1905, ch. 303), provides that the fact that an employee remains in an employment with knowledge that the employer has not sufficiently guarded or fenced dangerous machinery shall not operate as a defense to such an action as is here brought. This statute has eliminated assumption of hazard from the defense of contributory negligence in the class of cases to which it is applicable. *Klotz v. Power & M. M. Co.* 136 Wis. 107, 109, 116 N. W. 770; *Lind v. Uniform S. & P. Co., ante,* p. 183, 120 N. W. 839. We perceive no error in submitting to the jury for consideration the question of negligence on the part of the defendant and want of ordinary care on the part of the plaintiff.

8. The plaintiff was forty-three years old at the time of his injury and was earning $2.75 per day. Such injury necessitated the amputation of his left arm close to the shoulder. His nose was broken and the injuries to his face have resulted in disfigurement. Three of his ribs were fractured and his side was badly lacerated and had not entirely healed at the time of the trial. There was some testimony given tending to show that the injury to the side is permanent, although such evidence is of an unsatisfactory character.

The appellant urges that the damages awarded as compensation for the injuries detailed are excessive and should be reduced. In view of the deference that should be paid to the finding of a jury on this as well as on other questions of fact, and because the trial court who heard the testimony refused to say that the verdict was excessive, this court does not feel warranted in disturbing it. The writer does not concur in this conclusion, and thinks that the plaintiff should be required to remit a substantial sum from the judgment or to submit to a new trial. This view is concurred in by Justices MARSHALL and DODGE.

*By the Court.*—Judgment affirmed.

MARSHALL, J. (*dissenting in part*). As indicated in the court's opinion I concur with the writer thereof and Mr. Justice DODGE that the verdict is excessive. I apprehend that if we were permitted to appraise the damages as an original matter they would not reach near the jury's figure. The idea prevails that this court should not, in any case, reverse the trial determination on such a question unless the verdict appears so out of all reason, as to indicate, clearly, that there was passion or prejudice or perversity of some sort in reaching the result.

If I were to treat the subject here according to the stated prevailing view, and it must be conceded there is support for such view in the decisions of this court, I would say the recovery is so large as to leave the suggested fatal characteristic clearly inferable.

How are we to determine that the jury in such a case were actuated by passion or prejudice? Manifestly, not, necessarily, by seeking to discover whether they acted honestly. *Godfrey v. Godfrey,* 127 Wis. 47, 106 N. W. 814. A person may be moved by passion or prejudice to do or not to do a particular thing and yet be free from the slightest taint of moral or legal turpitude. We cannot determine whether a

jury were actuated by passion or prejudice by considering what amount of money a person would take as a fair equivalent for an arm, other disablements, pain caused thereby and impaired ability to work, and the future loss in that regard he will be reasonably certain to suffer,—in case he were given opportunity to make such exchange by treaty. We cannot determine the matter by the ability of the wrongdoer to respond in damages. The theory of the law is compensation. The damages would not be greater if caused by inadvertence of an individual of means so small that the amount for a single accident would be destruction, in that it would cast the defendant into bankruptcy, than if caused by one of great wealth. The subject has a deep practical common sense side. Every industrial accident whether caused by negligence of employer or employee or of both, or without the inadvertence of any one, involves a sacrifice upon industry's altar which must, inevitably, in the end, be cast upon the consumers of the products of industry. Pity 'tis that these inevitable sacrifices fall first upon the weakest members of society; those who work and must work within the zone of danger, and do not reach the final resting place by absorption into the general cost of living of the whole mass who are directly or indirectly served by the industry from which, from time to time, such distressing incidents must spring, without the waste and injustice of the present system, which repairs to some extent primary losses in a part only of the instances, leaving the others without any remedy at all.

Under our defective and lamentably imperfect system in assessing damages the question, in reality, is not what is a full equivalent for the injuries in the general sense, i. e. what would one take in money to repair the injuries, but what is a reasonable reparation under all the circumstances. How much for the mere inadvertence causing the loss, considering all interested, the employer who required the service in order to carry on his business, the employee who needed the em-

ployment, and the great consuming public which needed the combined service of employer and employee, should the latter have as an equivalent for those elements of loss which are not measured by any standard of comparison? That presents a practical question to be solved by sound judgment.

There is no market value for pain and suffering and parts of the human body. What sum of money would one take in exchange for an arm or a leg or an eye? Who can say with any degree of certainty what such things are worth? Who can say with that degree of certainty ordinarily necessary for a verdict? No sum of money can be named as the full equivalent for the severe mutilation of one's body. The whole idea of a full money equivalent contemplates an impossibility. All courts really recognize that in their declared helplessness to deal with destructive verdicts. The real idea, after all, is that he who, by breach of duty involving actionable inadvertence, injures another in his person should, as a penalty so to speak, make good to such other reasonably his loss. The fault in such a case is not criminal. If it were even of that high degree the law would not, as a rule, punish destructively. Mere inadvertence causing personal injuries are misfortunes attributable to human infirmity; never to human intention.

The foregoing suggests, as before stated, that the assessment of damages in a case of this sort presents a practical question to be solved by sound judgment not necessarily involving an exchange of equivalents on a money basis.

Does it not seem that tested by such judgment an injury, which, though severe, is so repaired by nature as to leave the afflicted one sound in mind and body to a large degree and capable of engaging in gainful occupations, should not be compensated to an extent which will yield him more than his previous customary income for life and leave at the end a fortune far in excess of what the average of his class ordinarily accumulates during a life of industry? Such an

award by the jury, it seems, evidences passion or prejudice, assuming, as we must, that they had a proper conception of the basis for measuring such losses.

We may well claim that the numerous laws, world wide, for repairing personal industrial injuries, accurately portrays the highest wisdom of our time in the light of generations of study and experience. By no one of such laws are such accidents regarded as justly entitling the injured one to compensation on the basis embodied in the verdict here. All are grounded on the idea of what an industry should reasonably contribute, under all the circumstances, to repair such unintentional injuries, the full money equivalent being regarded as impossible of ascertainment and impracticable of being rendered.

There is another side which I take this opportunity of discussing. The practice of setting aside verdicts and granting new trials to prevent a miscarriage of justice is a development from the judicial experience of ages. By the early common law it is probable there was no such practice. In time courts came to grant new trials whenever it appeared, clearly, that otherwise injustice would be done. Later the practice came to be governed by pretty well defined rules. One of them was that a verdict assessing damages in a case of this sort would not be set aside as excessive unless it appeared that the jury were actuated by passion or prejudice. It was common to raise the question on a motion to set aside the verdict as contrary to the evidence. In many jurisdictions that particular ground for a new trial has been carried into the Code by a provision for a new trial in case of "excessive damages appearing to have been given under the influence of passion and prejudice." That phrasing is found in most Codes. 14 Ency. Pl. & Pr. 759. Ours is one of the exceptions.

In some jurisdictions the particular ground for a new trial above mentioned is held to be included in the one that the

verdict is "contrary to the evidence." Our sec. 2878, Stats. (1898), has such ground, and, as before indicated, no such ground as excessiveness of damages under the influence of passion or prejudice. Since such precise common-law ground falling under the general scope as stated was not taken out of it and made one by itself, as is commonly done, it seems our Code-makers intended the scope of the general common-law ground as incorporated into the statute (sec. 2878) should remain as before.

That a motion to set aside a verdict as contrary to the evidence is broad enough under the Code to include improper assessments of damages through passion or prejudice or other perversity was early held in *Emmons v. Sheldon,* 26 Wis. 648. The court dealt with an inadequate verdict evincing passion or prejudice. It was held, on the ground of inadequacy evincing ignorance or perversity, to be contrary to the evidence. Our Code did not at first provide for granting a new trial for inadequacy of the verdict. The case cited was followed in *Robinson v. Waupaca,* 77 Wis. 544, 546, 46 N. W. 809, and *Whitney v. Milwaukee,* 65 Wis. 409, 27 N. W. 39.

I am not unmindful that this court has said a verdict cannot be successfully challenged on appeal for excessiveness in the absence of a motion in the trial court on that precise ground. *Sloteman v. Thomas & W. Mfg. Co.* 69 Wis. 499, 34 N. W. 225; *Collins v. Janesville,* 99 Wis. 464, 75 N. W. 88; *Howard v. Beldenville L. Co.* 134 Wis. 644, 114 N. W. 1114; *Duffy v. Radke,* 138 Wis. 38, 119 N. W. 811. But in such instances a distinction was not drawn between mere excessiveness and excessiveness through passion or prejudice. The former, it seems, is within the special statutory ground of fatal excessiveness, if not all such ground contemplates. I am inclined to the belief that it is the latter; that the Code-makers used the term "contrary to the evidence" in the same sense it had formerly been used, *i. e.* as including excessive-

ness through passion or prejudice or perversity of some sort, and to add a new ground covering cases of mere excessiveness, and so the words "through passion or prejudice," or similar words found in most Codes, were omitted from ours.

The idea early advanced by this court, as stated, that a motion to set aside a verdict on the ground of its being contrary to the evidence covers the defect of being characterized by passion or prejudice is found in the decisions of many states, as indicated in 14 Ency. Pl. & Pr. 766, note 1. Many of such authorities deal with inadequate verdicts, but it is hardly logical to say a verdict characterized by passion or prejudice is contrary to the evidence where it is too small and not where it is too large.

I am constrained to believe the practice has fallen somewhat into confusion by failure to distinguish between a perverse verdict, relievable from at common law, and under the statute by motion to set aside as contrary to the evidence, and a merely excessive verdict, made by the Code a separate and independent ground for a new trial, one unknown at common law.

While there are decisions of this court to the effect that to warrant granting a new trial because the verdict is too large it must satisfactorily appear that it is the product of passion or prejudice, there are others where relief was granted, passion or prejudice not being suggested, and still others where the verdict was very materially reduced as excessive and the jury at the same time were expressly acquitted of any fault other than mere error of judgment. Such was *Baker v. Madison,* 62 Wis. 137, 22 N. W. 141, 583. A verdict for $6,000 was condemned as excessive, the plaintiff being permitted at his option to take judgment for $3,500. It was contended that the court could not reverse for excessiveness, unless the damages seemed "flagrantly outrageous," so excessive as to lead to the conclusion that the jury were actuated by "passion or prejudice." Ancient common-law cases and

decisions from other jurisdictions, with some cases decided by this court not dealing with the Code on the question, were relied on. Relief was granted notwithstanding, as said in the opinion of the court, that the verdict was "not so large as to cause the inference that the jury were controlled or influenced by passion, prejudice, or bias, or any improper motive."

In *Murray v. Buell,* 74 Wis. 14, 17, 41 N. W. 1010, the impression is given that the element of passion or prejudice may be absent and the verdict yet be set aside as excessive. In somewhat contradictory language the court made the suggestion, but said it was unnecessary to pass upon the matter.

In *Heddles v. C. & N. W. R. Co.* 74 Wis. 239, 259, 42 N. W. 237, the verdict was set aside because of mere misconception of duty, misdirection of the court, passion, or prejudice, again suggesting that mere want of reasonable judgment is sufficient.

The field I have discussed is very broad and very important to the administration of justice. It would require a very lengthy opinion to review all cases in this court and those elsewhere under Codes similar to ours, and demonstrate that our Code provision for a new trial for excessiveness of the verdict includes want of judgment on the part of the jury, and excludes excessiveness because of passion or prejudice or perversity of any kind, that falling under the general head of contrary to the evidence. That was so held in *Beavers v. Mo. Pac. R. Co.* 47 Neb. 761, 66 N. W. 821, under a similar statute. It is otherwise · held in California because the Code there contains a ground for a new trial, as follows: "Excessive damages appearing to have been given under the influence of passion or prejudice." It is also so held in Minnesota, but the Code provision there is as follows: "Excessive or insufficient damages appearing to have been given under the influence of passion or prejudice." Note that the language here is "for excessive or inadequate damages."

True, in many jurisdictions a similar Code provision is held not to cover cases where there is no rule for estimating damages, so that the recoverable amount must rest rather in mere judgment than calculation. But in such jurisdictions it is held, in general, that excessiveness through passion or prejudice falls under the classification of "contrary to the evidence," while, as we have seen by *Baker v. Madison, supra,* and others of our cases, verdicts here have been disturbed on the ground of mere excessiveness in instances of this sort and of inadequacy, as well, produced by passion, prejudice, or some other improper motive, under the special ground quoted.

Does it not appear quite plain that our Code-makers did not contemplate cases of improper verdicts relievable from under the general head of "contrary to the evidence" in adding the particular ground: "For excessive or inadequate damages," and that, misled by the common-law rules that a verdict should not be set aside for excessiveness unless characterized by passion or prejudice, and decisions elsewhere under a specific Code provision on the subject, the effort of our lawmakers to enlarge the grounds for relief from unjust recoveries has not been realized.

Viewing the case as indicated, that it is competent to deal with the verdict upon the ground of its being excessive regardless of passion or prejudice or perversity or any improper motive; merely because it is clearly too much: more than in reason can be justified, I cannot escape the conclusion that justice requires plaintiff to take less by at least three or four thousand dollars. I should so conclude under the severe rule which need not be applied, as we have seen. I assume the court would condemn the recovery except for the thought that it cannot be done without condemning the jury as having acted from some improper motive. I cannot think our judicial machinery is impotent to do justice between man and man in such a case without so first condemning the jury. If a verdict is too large it is as unjust to the

appellant if honestly rendered, or rendered without any improper influence, as if it were otherwise too large. It is the unwarranted size of the verdict which does the mischief, not the cause of excessiveness.

In the foregoing I have not lost sight of the fact that the court cannot properly substitute its judgment for that of the jury. Ordinarily the collective judgment of twelve jurymen on such a subject as the just compensation due in a case of this sort is safer than that of any judge, or perhaps a bench of judges. But whether a jury exercised sound judgment, tested by whether the bounds of reason were plainly overstepped, or a proper conception of the situation was entertained, as well as whether the result is characterized by good faith, are judicial questions. In solving such the court does not invade the province of the jury.