PFEIFER, by Guardian *ad litem,* and another, Appellants, vs. STANDARD GATEWAY THEATER, INC., Respondent.*

*September 16—October 7, 1952.*

---

* Motion for rehearing denied, with $25 costs, on December 2, 1952.

For the appellants there was a brief by *Kenney, Korf & Pfeil* of Elkhorn, and oral argument by *Francis J. Korf*.

For the respondent there was a brief by *Cavanagh, Mittelstaed, Sheldon & Heide* of Kenosha, and oral argument by *William A. Sheldon*.

Currie, J. Counsel for plaintiffs on this appeal contend: (1) That the negligence of the defendant, as found by the jury, constituted a proximate cause of the plaintiff minor's injury as a matter of law; and (2) that the trial court committed error in the instructions given to the jury on the question of proximate cause.

This case was before this court on a previous appeal taken by plaintiffs from a judgment entered upon an order directing a verdict dismissing the action. *Pfeifer v. Standard Gateway Theater, Inc.* (1951), 259 Wis. 333, 338, 48 N. W. (2d) 505. In our decision in that case we declared:

"There was sufficient testimony to permit the jury to infer that the operating cause of Robert's injury was the conduct of the other boys; that in all reasonable probability the injuries were the proximate result of defendant's negligence."

We thus held in our former decision that the question of proximate cause was one for the jury and that there was sufficient testimony to have permitted the jury to have decided such question in favor of the plaintiffs. We did not hold that such question of proximate cause must be decided as a matter of law in plaintiffs' behalf in the event the negligence question was decided favorably to the plaintiffs. There is nothing in the record on the second trial to cause us to change our former opinion that the question of proximate cause presented a question of fact for the jury. The jury had a right to draw the inference, among other possible inferences,

that no matter how frequently or carefully the defendant had patrolled its theater, the spitball might, nevertheless, have been projected by the unknown person guilty of such act.

Sec. 434, comment *c*, Restatement, 2 Torts, p. 1172, states:

"If the evidence is conflicting or, although not contradictory, is open to two or more reasonable inferences as to what actually took place, the case must be left to the jury."

On the question of proximate cause, the trial court instructed the jury as follows:

"Upon reading the verdict you will note that question 2 relates to causation, and this is what is commonly known as a proximate-cause question. By 'proximate cause' of an injury or damage is meant the efficient cause,—that which acts first and produces the injury *as a natural and probable result,* under such circumstances that he who is responsible for such cause, *as a person of ordinary intelligence and prudence, ought reasonably to foresee that a personal injury to another may probably follow from such person's conduct.* It is not necessarily the immediate, near, or nearest cause, but one that acts first, whether immediate to the injury or such injury be reached by setting other causes in motion, each in order being started naturally by the one that precedes it, and altogether constituting a complete chain or succession of events, so united to each other by a close causal connection as to form a natural whole, reaching from the first or producing cause to the final result." (Emphasis supplied.)

Plaintiffs' counsel contends that the italicized portions of such quoted instruction constitute error because they interject the element of "foreseeability" into the jury's consideration of the questions in the special verdict relating to proximate cause.

The instruction so given by the trial court is substantially verbatim the one recommended by Mr. Justice MARSHALL in his opinion in *Deisenrieter v. Kraus-Merkel Malting Co.* (1897), 97 Wis. 279, 288, 72 N. W. 735. This particular instruction on proximate cause was thereafter approved by

this court in *Feldschneider v. Chicago, M. & St. P. R. Co.* (1904), 122 Wis. 423, 431, 99 N. W. 1034; *Monaghan v. Northwestern Fuel Co.* (1909), 140 Wis. 457, 122 N. W. 1066; *Stumm v. Western Union Tel. Co.* (1909), 140 Wis. 528, 532, 122 N. W. 1032; and *Bell L. Co. v. Bayfield T. R. Co.* (1919), 169 Wis. 357, 361, 172 N. W. 955. In *Stumm v. Western Union Tel. Co., supra,* page 532, it was stated that the instruction on proximate cause given by the trial court in that case "was copied substantially *verbatim* from *Deisenrieter v. Kraus-Merkel Malting Co.* 97 Wis. 279, 72 N. W. 735, which has been approved by this court in decisions found in every volume of our reports for the past twelve years."

While the instruction on proximate cause so recommended in *Deisenrieter v. Kraus-Merkel Malting Co. Case, supra,* and approved in so many subsequent decisions has never been directly repudiated or overruled by any decision of this court; nevertheless, plaintiffs' counsel contends that such instruction was impliedly repudiated by the decision in *Osborne v. Montgomery* (1931), 203 Wis. 223, 234 N. W. 372. With this contention we must agree.

Mr. Chief Justice Rosenberry, in writing the opinion of the court in *Osborne v. Montgomery, supra,* made a most careful and analytical examination of the subject of causation in negligence cases in order to determine the proper type of instruction to be given the jury on the question of proximate cause, giving special attention to the problem of the possible relationship of reasonable anticipation, or foreseeability, to proximate cause. He came to the conclusion that foreseeability was an element of negligence but had no place in determining the question of whether an act which has been found to be negligent, after applying the test of reasonable anticipation of harm to another resulting from such act, is the proximate cause of injury or damage sustained by a per-

son other than the actor. This conclusion is stated in the opinion as follows (p. 242):

"If it be kept in mind that foreseeability under our law as it now stands applies only to the question of negligence or the failure to exercise ordinary care, and not to limit the liability for the consequences of the wrongful act, much confusion should be done away with."

The author of the annotation entitled "Foreseeability as Condition of Liability," 155 A. L. R. 157, 160, cites 38 Am. Jur., Negligence, p. 707, sec. 58; 1 Street, Foundations of Legal Liability, p. 116; 74 Pennsylvania Law Review, 486, citing 49 Pennsylvania Law Review, 79, 161; 26 Michigan Law Review, 832, as authorities in support of the following conclusion of the author:

"There is a strong current of authority for the view that while foreseeability of harm is a proper element of negligence, it does not enter into the definition or test of proximate cause once negligence has been established."

It was also error to charge the jury in the instant case that proximate cause is one which *"produces the injury as a natural and probable result"* of defendant's negligence. The use of the term *"probable result"* carries with it a connotation of foreseeability and was distinctly disapproved in the decision in *Osborne v. Montgomery, supra,* in the following language (p. 236):

"Assuming, however, that an actor is guilty of negligence which results in damage to another, what is the extent of his liability? It is often said that he is liable for all of the natural and probable consequences of his wrongful act. This is not the law in Wisconsin; his liability is not so limited."

In *Bengston v. Estes* (1952), 260 Wis. 595, 600, 51 N. W. (2d) 539, we approved the holding in *Osborne v. Montgomery, supra,* "that it is not the law in Wisconsin

that an actor is liable for the natural and probable consequences of his act, his liability not being limited to the probable consequences."

The inclusion of the last sentence of the charge on causation given by the learned trial judge in the instant case, to wit:

"It is not necessarily the immediate, near, or nearest cause, but one that acts first, whether immediate to the injury or such injury be reached by setting other causes in motion, each in order being started naturally by the one that precedes it, and altogether constituting a complete chain or succession of events, so united to each other by a close causal connection as to form a natural whole, reaching from the first or producing cause to the final result."

is not objectionable and was specifically approved by this court in *Elkey v. Elkey* (1940), 234 Wis. 149, 154, 290 N. W. 627, decided subsequently to *Osborne v. Montgomery*.

The authorities have long recognized that the use of the term "proximate cause" in charging a jury is likely to be confusing, and at best is not very enlightening unless defined in such simple terms that the average juror can readily comprehend the same. In *Osborne v. Montgomery* it was stated (p. 242):

"The use of the objectionable term 'proximate cause' may be avoided by using the term 'legal cause,' or 'cause,' or perhaps 'substantial factor,' if the proper meaning be attributed to whatever term is used."

Professor Richard V. Campbell, in his excellent article, "Duty, Fault, and Legal Cause," appearing in 1938 Wisconsin Law Review, 402, favors the giving of an instruction which defines proximate cause, or equivalent substitute term, as "substantial factor."

"Substantial factor" is probably as simple and accurate a term in defining proximate or legal cause as has thus far been suggested. An instruction on proximate cause would be

proper which informs the jury that by proximate cause, legal cause, or cause (whichever of such three terms as may have been used in framing the causation question in the special verdict) is meant such efficient cause of the accident as to lead the jurors, as reasonable men and women, to conclude that the negligence of A (A having been found negligent by the jury's answers to prior question in the verdict) was a *substantial factor* in causing the injury.

In the record of one of the cases being considered by the court on this assignment is an instruction on causation given in an automobile collision case by a learned trial judge of long experience which makes effective use of the term *"substantial factor."* We are setting forth such charge herein as an example of an instruction on proximate or legal cause which seems at present to embody ideally the ideas on the subject expressed in this opinion. Such instruction reads as follows:

"You will notice the question is not whether the found negligence was the cause of the collision or accident, but the question is whether it was a cause, and the question is framed in that way because there may be more than one cause of a collision or an accident, the negligence of one person may cause a collision or an accident, and the combined negligence of two or more persons may cause it. If you find that A was negligent in respect to failing to yield the right of way to B, and you find that such negligence was a substantial factor in causing the collision, then such relation of cause and effect existed; but in order that a given negligence may be considered a cause of a collision or an accident there must be a close, direct, and causal connection between the negligence and the collision."

This foregoing instruction has not been set forth for the purpose of having it become a stereotyped instruction to be used in the future by the trial judges of the state, but merely as an illustration of the use of simple, understandable language in correctly defining to a jury the term proximate

or legal cause. It will be noted that the use of the word *"proximate"* does not appear at all in this instruction.

It may be urged that the elimination of any test of foreseeability, such as "natural and probable result," from an instruction on causation in negligence cases, might result in imposing liability in extreme cases in which a negligent act may have set in motion a long chain of events resulting in harm to another at the remote end of the chain. Mr. Chief Justice ROSENBERRY'S answer to such a contention in *Osborne v. Montgomery, supra,* was (p. 237):

"Any rule which operates to limit liability for a wrongful act must be derived from judicial policy and its limits cannot be defined by any formula capable of automatic application but must rest in the sound discretion of the court."

Comment *e*, sec. 435, 2, Restatement, 2 Torts (1948 Supp.), p. 739, recognizes this same principle when it states:

"It is impossible to state any definite rules by which it can be determined that a particular result of the actor's negligent conduct is so highly extraordinary as to prevent the conduct from being a legal cause of that result. This is a matter for the judgment of the court formulated after the event, and therefore, with the knowledge of the effect that was produced."

In other words, in cases so extreme that it would shock the conscience of society to impose liability, the courts may step in and hold as a matter of law that there is no liability. An example of this is *Palsgraf v. Long Island R. R. Co.* (1928), 248 N. Y. 339, 162 N. E. 99. In that case A, carrying a package, attempted to board a moving train and two employees of the defendant railroad company attempted to assist him. In doing so they negligently knocked the package from A's arms. Unknown to the defendant's employees, the package contained fireworks, and they exploded with such violence that some scales many feet away were

knocked down by the concussion, thereby injuring the plaintiff. The New York court of appeals in an opinion written by the noted jurist, Mr. Chief Judge CARDOZO, held that as a matter of law the plaintiff could not recover, and stated his conclusion as follows (p. 341):

"The conduct of the defendant's guard, if a wrong in its relation to the holder of the package, was not a wrong in its relation to the plaintiff, standing far away. Relatively to her it was not negligence at all. Nothing in the situation gave notice that the falling package had in it the potency of peril to persons thus removed."

In a dissenting opinion Mr. Judge ANDREWS argued the question of proximate cause and came to the conclusion that the proximate cause of plaintiff's injury was the negligence of defendant's employees because their wrongful act had set in motion the sequence of events which produced the harm without any intervening cause. Logic seems to be on the side of the dissenting opinion, yet the majority opinion can be justified from the standpoint that judicial policy warranted the result. The conscience of society might be shocked by imposing liability in such a case.

In *E. L. Chester Co. v. Wisconsin Power & Light Co.* (1933), 211 Wis. 158, 174, 247 N. W. 861, action was brought to recover damages to a store building demolished as a result of gas which escaped from a broken valve in a gas main. The gas seeped through twenty feet of earth, which separated the valve from the exterior front wall of the store building, within a period of two hours or less. The testimony disclosed that this was a rather unusual and extraordinary result. This court in its decision in that case held that while it is true that in the vast majority of cases reasonable anticipation of some injury to the interests of others is all that is necessary to establish actionable negligence, there are cases in which reasonable anticipation should be limited to a par-

ticular type of injury, and that this case was of the latter type. A new trial was granted so that the question of whether the particular type of injury which occurred should have been reasonably anticipated by the defendant might be submitted to the jury.

The effect of the decision in *E. L. Chester Co. v. Wisconsin Power & Light Co., supra,* is to hold that, in submitting the ordinary or "mine run" type of negligence case, the jury should be asked to determine whether the party charged with negligence should have reasonably anticipated some injury to the interests of others might result from the alleged negligent act, while in the unusual or "hard" case the inquiry as to reasonable anticipation should be limited to the particular type of injury which actually occurred. We no longer consider this to be the proper solution of the problem presented by the unusual case in which the injury suffered is a remote or unusual result of the act claimed to be negligent. It would seem to be preferable to submit these hard cases to the jury in so far as determining the issues of negligence and causation in the same manner as in the ordinary case. If the jury does determine that there was negligence, and that such negligence was a substantial factor in producing the injury, it is then for the court to decide as a matter of law whether or not considerations of public policy require that there be no liability. As previously pointed out, this latter solution is the one advanced in *Osborne v. Montgomery, supra,* and we adhere thereto. It is also in accord with the views expressed by Professor Campbell in his article in 1938 Wisconsin Law Review, 402, and with Restatement, 2 Torts (1948 Supp.), p. 739, sec. 435, 2, comment *e,* thereunder.

Returning now to the immediate problems presented in the instant case, the one question remaining to be passed upon is whether the error in the trial court's instruction on causation was prejudicial to the interests of the plaintiffs so as to

require the granting of a new trial. In considering this question we have no right to assume that the jury did not comprehend the definition of proximate cause given by the trial court, but on the contrary must assume that it did comprehend the same. If the jury came to the conclusion that, although the defendant was negligent in not properly patrolling the theater and in not using reasonable care in controlling the conduct of the patrons, nevertheless, the injury to the plaintiff minor could not have been reasonably foreseen by the defendant as likely to result from such negligence, or that such injury was not the "probable" result thereof, and because of reaching such conclusion answered the causation questions "No," the rights of the plaintiff necessarily were prejudiced thereby. We cannot assume that the reaching of such a conclusion by the jury is such an improbable or unreasonable occurrence that it is not within the realm of reasonable probability.

In *Bengston v. Estes, supra,* this court held an instruction which employed the term "clear preponderance of the evidence" instead of "fair preponderance of the evidence" to have been prejudicial so as to require a reversal and the directing of a new trial. The error in the instruction in the instant case would seem more likely to mislead a jury than did that in the *Bengston Case.* As much as we dislike to have to send this case back for a third trial, it becomes our duty to do so in view of the prejudicial error in the trial court's instructions.

*By the Court.*—Judgment reversed and cause remanded with directions for a new trial.